Michael McShane (SB 127944)
Dana M. Isaac (SB 278848)
AUDET & PARTNERS, LLP
221 Main Street. Suite 1460
San Francisco, CA 94105
Telephone: (415)568-2555
Facsimile: (415)568-2556
mmcshane@audetlaw.com
disaac@audetlaw.com

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com

*(additional counsel on signature page)*

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TOMPKINS, an individual, on behalf of himself and others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>23ANDME, INC.,<br><br>        Defendant**.** | **CASE NO. _____**<br><br>**CLASS ACTION AND REPRESENTATIVE ACTION**<br><br>**COMPLAINT FOR DAMAGES, EQUITABLE, AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

1    COMES NOW Plaintiff David Tompkins ("Plaintiff"), on behalf of himself and all

2    others similarly situated (the "Class"), and brings this action against Defendant 23andMe, Inc.

3    alleging the following upon personal knowledge as to his actions and upon information and

4    belief based upon the investigation of his attorneys as to all other facts alleged in this complaint:

5    **INTRODUCTION**

6        1.    This class action concerns false, misleading and improper representations,

7    advertisements and promises cavalierly made by 23andMe, Inc. ("Defendant" or "23andMe")

8    concerning its DNA Saliva Collection Kit/Personal Genome Service ("Saliva Kits"). For the

9    cost of $99.00, 23andMe suggests, upon receiving a submitted DNA saliva sample from a

10   customer through the mail, that it can accurately determine and forecast, among other things,

11   health reports and status, traits and various drug responses. 23andMe makes these promises

12   without providing any scientific or clinical validation whatsoever that its Saliva Kits are

13   accurate, reliable or fit for its advertised uses. 23andMe's Saliva Kits have not even received

14   marketing authorization or approval from the Food and Drug Administration ("FDA"). Ignoring

15   this vital requirement and in violation of the Federal Food, Drug and Cosmetic Act ("FDC

16   Act"), until December 6, 2013, 23andMe continued to market, advertise, promote and sell its

17   Saliva Kits without the FDA's approval and in a violative manner.

18       2.    In addition to misleading unsuspecting consumers who purchase Saliva Kits in

19   the belief that they are scientifically valid, 23andMe aggregates genetic information that it

20   receives from its customers and markets it to the scientific community for scientific research

21   that "could lead to commercial use."

22       3.    As a result of 23andMe's improper and unlawful conduct, countless consumers

23   and end-users, who relied on Defendant's representations and statements as being truthful and

24   accurate, have been deceived, wronged, and financially harmed.

CLASS ACTION COMPLAINT                                                          2 of 26

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because the Plaintiff and over two-thirds of the Class Members are of diverse citizenship from the Defendant; and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00) exclusive of interest and costs.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, a substantial part of the property that is the subject of this action is situated here, and Defendant is subject to personal jurisdiction, in this District.

6.      As a result of Defendant's designing, testing, developing, manufacturing, distributing, advertising, promoting and/or selling of Saliva Kits to purchasers throughout California, Defendant obtained the benefits of the laws of California.

7.      Defendant conducted systematic and continuous business activities in and throughout the state of California and otherwise intentionally availed itself of the markets of the state of California through the promotion and marketing of its business.

**PARTIES**

8.      At all times herein relevant, Plaintiff Tompkins was and is a resident of Montgomery County, Maryland.

9.      In August 2013, Plaintiff Tompkins purchased a Saliva Kit after seeing and relying on Defendant's print and online advertising suggesting that the product was reliable and accurate.

10.      Plaintiff paid $99.00 for his Saliva Kit.

11.     After receiving his Saliva Kit, and spitting onto a provided stick (which is used to obtain the purported DNA testing sample), Plaintiff mailed the materials back to 23andMe for a determination as DNA related traits, family characteristics and general health condition(s).

12.     Several days after he submitted his sample, Plaintiff received an e-mail confirmation from Defendant stating that its laboratory had received the submission.

13.     On September 25, 2013, Plaintiff received an e-mail from Defendant stating: "Your health results as well as select ancestry features are ready to review. DNA Relatives and Ancestry Composition rely on additional computation, and you'll receive an email when those are complete."

14.     Plaintiff relied on the representations and statements of 23andMe to be accurate.

15.     Immediately upon receiving his results, Plaintiff did not trust the accuracy of the tests.

16.     Plaintiff would not have purchased the Saliva Kit for $99.00 had he known that the results would be false, unsubstantiated, misleading and inaccurate.

17.     Defendant 23andMe, Inc., is a Delaware corporation founded in 2006. It is headquartered in Mountain View, California and conducts business in the State of California and throughout the United States.

**FACTUAL ALLEGATIONS**

18.     Defendant 23andMe advertises, markets and sells it Saliva Kits directly to consumers through print, on-line means and radio advertisement mediums.

19.     Defendant claims that it Saliva Kits act as an accurate and reliable DNA genetic test.

20. Upon receiving a submitted sample from a customer, Defendant allegedly conducts a DNA test for over 240 "conditions" and genetic traits (claims to test: health factors, traits, and other related conditions).

21. Upon determining the purported results, using unknown testing conditions and means, Defendant sends a "report" back to customers which it claims to be accurate.

**A. 23ANDME'S SALIVA KITS VIOLATE THE FEDERAL FOOD, DRUG AND COSMETIC ACT.**

22. Because it cannot provide proof of the validity of its marketing claims to the FDA and has not obtained marketing permission or approval from the FDA, advertising and sale of Defendant's Saliva Kits violate the Federal Food, Drug, and Cosmetic Act ("FD&C Act").

23. On November 22, 2013, the FDA sent Defendant a "Warning Letter" ("FDA Letter") enumerating various concerns it had with the Saliva Kits and the way Defendant advertised the product. The FDA specifically cited concerns about the public danger involved in false positives and false negatives for serious health conditions purportedly tested by Defendant's kits.

24. The FDA Letter, among other things, stated that "[t]o date, 23andMe has failed to provide adequate information to support a determination that the PGS [Saliva Kits] is substantially equivalent to a legally marketed predicate for any of the uses for which you are marketing it; no other submission for the PGS device that you are marketing has been provided under section 510(k) of the [FDC] Act, 21 U.S.C. § 360(k)."

25. To date, the FDA still has not received any assurance that the Defendant has analytically or clinically validated the Saliva Kit for its intended uses.

26. The FDA letter importantly states that: "The risk of serious injury or death is known to be high when patients are either non-complaint or not properly dosed; combined with

1    the risk that a direct-to-consumer test result may be used by a patient to self-manage, serious

2    concerns are raised if test results are not adequately understood by patients or if incorrect test

3    results are reported."

4           27.    As the FDA makes clear in its letter, 23andMe advertised and marketed Saliva

5    Kits to consumers without any analytical or clinical data to support its accuracy or validity.

6           **B.     DEFENDANT'S FALSE AND MISLEADING REPRESENTATIONS**
              **CONCERNING PURPORTED HEALTH BENEFITS.**

7

8           28.    Defendant cavalierly represents and advertises that the results of Saliva Kit tests

9    will improve consumers' health. Defendants state the following on their website:

10          a.    "Learn hundreds of things about your health. Using your DNA
             information, 23andMe helps you know more about your health so you can take an
11           active role in managing it. With reports on over 240+ health conditions and traits,
             here are a few of the things you'll learn about you."

12

13          b.    "Plan for the future. Find out if your children are at risk for inherited
             conditions, so you can plan for the health of your family."

14          c.    "Living well starts with knowing your DNA."

15          d.    "Health tools - Document your family health history, track inherited
             conditions, and share the knowledge."

16

17          e.    "Drug response - Arm your doctor with information on how you
             might respond to certain medications."

18          f.    "Below are a few examples [diabetes, arthritis, coronary heart disease,
             breast cancer, plavix, lactose intolerance] where we can help you learn more. And

19           when you know more, you can make better lifestyle choices, look out for common
             conditions and take steps toward mitigating serious diseases."

20

21          29.    Defendant's statements about its health benefits even go as far as stating:

22          23andMe is a DNA analysis service providing information and
             tools for individuals to learn about and explore their DNA. We use

23           the Illumina HumanOmniExpress-24 format chip . . . . Our chip
             consists of a fully custom panel of probes for detective single

24           nucleotide polymorphisms (SNPs) selected by our researchers. The

CLASS ACTION COMPLAINT                                                      6 of 26

1   selection was made to maximize the number of actionable health
2   and ancestry features available to customers as well as offer
    flexibility for future research.

3       30.     To the contrary, the Saliva Kits work to confuse customers as to their health and

4   possibly cause adverse health reviews and diagnoses. For instance, on May 14, 2008, Dr.

5   Rudolph Tanzi, a professor of neurology at Harvard University and director of the Genetics and

6   Aging Research Unit at Massachusetts General Hospital, testified before the United States

7   Senate Special Committee On Aging about the dangers of Defendant's product, stating as

8   follows in response to a question from then-Senator Hillary Rodham Clinton:

9               [I]t should be noted that companies like 23andMe, Navigenics,
                Knome, and DeCode are already charging considerable sums of
10              money for anyone who wishes to pay to be tested for the
                ''unconfirmed'' genetic risk factors for Alzheimer's and other
11              common diseases, e.g. cardiovascular disease, cancer, and stroke.
                In my view, it is highly premature and both medically and
12              commercially irresponsible to be conducting these tests. To
                reliably predict disease risk, we will first need to establish the full
13              set of ''confirmed'' risk factors and then determine how they work
                together to influence risk in a ''multigenic'' manner. As these
14              companies become more popular, the public will need to be
                increasingly informed and educated about the fact these tests are
15              not yet accurate, reliable, or scientifically sound. I am concerned
                that these tests may increasingly lead to unwarranted anxiety or a
16              false sense of security about one's genetic destiny as these
                companies services become more ''trendy.''

17

18      31.     Defendant's health assertions, statements and representations are unfounded and

19  not supported by any scientific research or factual basis.

20      C.      **DEFENDANT'S FALSE AND MISLEADING ADVERTISEMENTS AND
                REPRESENTATIONS.**

21

22      32.     Defendant continues to market and advertise its Saliva Kits as being beneficial

23  and useful despite having no scientific data or research to support the claims.

24

CLASS ACTION COMPLAINT                                                    7 of 26

33.     In January 2013, in response to an FDA inquiry, 23andMe was still "completing the additional analytical and clinical validations for the tests that have been submitted" and "planning extensive labeling studies that will take several months to complete."

34.     On November 22, 2013, the FDA issued a Warning Letter to 23andMe, stating that it was had not received marketing clearance or approval for its Saliva Collection Kit and Personal Genome Service and was in violation of the Federal Food, Drug and Cosmetic Act, despite repeated demands from the FDA for further information.

35.     On December 6, 2013, in response to the FDA's November 22, 2013 Warning Letter, 23andMe ceased marketing its services relating to the disease and other conditions.

36.     Consumers would not purchase the Saliva Kits if they knew that Defendant's representations were false and that the product was not sanctioned by the FDA.

37.     Defendant was and is aware of the misleading nature of its product by way of countless Internet consumer complaints:

> I also found both the so called health analysis to be pretty much useless. Sure, you're told that people with your genetic markers have a higher percentage than others markers of a certain disease or health risk, but so what? That is totally meaningless as lifestyle, diet, excercise [sic] and a host of other factors come into play and serve a far more important determination of what kind of health you have and are going to have. I didn't expect a lot from this test- but perhaps something a little more defined than what this offers. In addition, there a TON of very personal surveys and questions they ask you (optional of course)- some of which seem to written by very bored college research interns. In my opinion, unless you have no idea what your racial makeup is and no clue about where modern humans originate from, don't waste your money on this.

> ***

> I heard that you also need to enroll(mandatory)for ten months and pay $5/mo to keep your page going. Too many complaints about CS, ghost Co. overseas? Results are just a general idea generated by a PC software....if it is CHEAP, don't expect true good results! Also seems like they fail to disclose that your "controversial"

CLASS ACTION COMPLAINT

information maybe leaked (sold?) to the Health and Insurance Companies to use for review when you apply for services, don't waste your money and loose your personal information at same time...STAY AWAY.

***

23andme charged me $395 for my DNA analysis. They only analyzed my DNA to a certain point, saying they have not analyzed my branch of DNA any further (I guess it was not beneficial to the woman, the wife of a GOOGLE founder, to learn any more about this genetic profile). They then asked me to pay them MORE money if I wanted to learn about my genetic predisposition to getting Alzheimer's. I wanted to see if I had any relatives in the world, since all of my relatives except my parents were killed in the Holocaust, but they have a very low user rate, so the chances of finding a close relative are almost nil. If you want to get your DNA analyzed, I strongly recommend you try one of the companies offering this service.

***

Even after sending me a replacement test they can't read my DNA. They are offering to refund the money I paid for the test but offered NO explanation as to why they couldn't read it. I followed the directions to the letter both times. This concerns me.

***

Not worth the risk of a very questionable study. The Terms of Agreement are invasive and not like any requirements for a legitimate study. I was very concerned about my private information, how it would be used, and to whom it would be made available.

***

I paid $299 for the kit 8 months ago. It is now being offered for $99 and based on other reviews, has been offered for that price in the past. Is is [sic] worth $299? Absolutely not! Will they offer you a partial refund? Absolutely not! The genealogy information is very general. It may be because they do not have a big enough data base to offer more detailed information. The information concerning health risks while interesting was not entirely accurate. In my own case, I have had a couple of serious health conditions that were listed as very low risk for me. I have to wonder how accurate the other results are.

***

CLASS ACTION COMPLAINT

9 of 26

I think this is a scam.... They took a sample, and after two months, I find out that they could not get DNA from the sample, and sent me another kit. A month later, they tell me that they couldn't get DNA, and will refund my money "less shipping costs" So, they keep the shipping costs, I lost months of time waiting, and have nothing to show for it, except a smaller wallet. I don't want my money back -- I want my results! In the meantime, no help as to trying to find out WHY they didn't get DNA from my saliva... Except that maybe there is no DNA in saliva??? They need skin cells, so why not provide a swab to collect DNA from my cheek? Or offer some other way to do it, other than dropping me and keeping a portion of my money? There is NO place to call for support. They do NOT respond to their emails

Their support level is a JOKE.

***

23ANDME is a RIPOFF! RIPOFF! RIPOFF!. It's a SCAM!!! It's a SCAM!!! I bought one of their $99 test kits that will break down my genetics and tell me my chances of getting ill from certain cancers and heart disease. I could not believe my eyes when I saw the test results. TOTALY FALSE! They make these numbers up! I called them for a refund and I was insulted by Andy Page who refused to return my money. I had my tests done somewhere else and the results were totally different. I called them again and a technician by the name of "Arnab Chowdry "secretly told me that the results are made up and no actual genetic study is done. Anne "The founder of this scam" he told me, made up the idea when they where dating each other. I want to make myself available for any class action lawsuits against this FRAUD!.

38. Buried within the TOS is the real reason that Defendant is asking consumers to pay $99.00 to have their DNA analyzed: Defendant plans to create a huge DNA database and use the aggregate and individual data that it collects about customers' DNA for research, including with commercial partners.

39. Defendant's TOS provides that, "in order to expand and accelerate the understanding and practical application of genetic knowledge in health care, we invite all genotyped users to participate in 23andWe Research. Participation in such research is voluntary and based upon an IRB-approved consent document." The TOS define "23andWe Research" as

"scientific research that 23andMe performs with the intent to publish in a peer-reviewed scientific journal. 23andWe Research only uses Genetic and Self-Reported Information from users who have given consent according to the applicable Consent Document. 23andWe Research activities do not include R&D."

40.     Despite attempting to obtain this consent from each of its customers, Defendant explains much further in its TOS that they "will not receive compensation for any research **or commercial products** that include or result from [thei]r Genetic Information or Self-Reported Information." (Emphasis added.)

41.     The TOS describes Defendant's use of customers' "Genetic and Self-Reported Information" as follows:

> If you have given consent for your Genetic Information and Self-Reported Information to be used in 23andWe Research as described in the applicable Consent Document, we may include your information in the Aggregated Genetic Information and Self-Reported Information we disclose to third parties for the purpose of publication in a peer-reviewed scientific journal. 23andMe may also include your information in Aggregated Genetic and Self-Reported Information disclosed to third-party non-profit and/or **commercial research partners** who will not publish that information in a peer-reviewed scientific journal. (Emphasis added.)

42.     The TOS explicitly requires customers who agree to having their genetic information become part of 23andMe's aggregate database to waive their rights to any products that result from the research that uses their DNA: "Waiver of Property Rights. As stated above, you understand that by providing any sample, having your Genetic Information processed, accessing your Genetic Information, or providing Self-Reported Information, you **acquire no rights in any research or commercial products that may be developed by 23andMe or its collaborating partners. You specifically understand that you will not receive compensation for any research or commercial products that include or result from your Genetic**

CLASS ACTION COMPLAINT                                                         11 of 26

1   **Information or Self-Reported Information**." (Emphasis Added.) If a customer agrees to

2   having his or her individual DNA disclosed to researchers, 23andMe's Privacy Statement

3   discloses that it may also be put to commercial use: "If you have consented to use of your

4   individual-level data in the Research Portal feature, qualified researchers (who must comply

5   with certain requirements) may access your individual-level Genetic and/or Self-Reported

6   Information for the purpose of scientific research, which could **lead to commercial use."**

7       43.     Nowhere in the advertising or website does Defendant disclose that this is the

8   real purpose of its DNA testing services.

9       44.     In addition, based on information and belief, in an effort to make its product

10  appealing, Defendant also publishes false "research" reports and studies that lack any statistical

11  or scientific data.

12      45.     Defendant's representations are misleading, deceptive and unfair. Defendant's

13  misrepresentation and practices injured and caused the relying Plaintiff and putative Class

14  Members financially.

15                          **CLASS ACTION ALLEGATIONS**

16      46.     Plaintiff seeks to bring this case as a class action, under Federal Rule of Civil

17  Procedure 23, on behalf of himself and all others similarly situated. The proposed Class is

18  defined as:

19          All individuals and entities that have purchased a 23andMe Saliva Kit in the
            United States or California.
20
            Excluded from the Class are Defendant, any entity in which Defendant have a
21          controlling interest or which has a controlling interest of Defendant, and
            Defendant's legal representatives, assigns and successors. Also excluded are the
22          judge to whom this case is assigned and any member of the judge's immediate
            family.
23

24

CLASS ACTION COMPLAINT                                                    12 of 26

47.      ***Numerosity.*** The number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

48.      ***Commonality and predominance.*** Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendant complained of herein were generally applicable to the entire Class. These legal and factual questions include, but are not limited to:

a.   Whether Defendant advertised and sold Saliva Kits with knowledge of its unreliability and misleading results;

b.   Whether Defendant's advertising was unfair, deceptive, untrue, or misleading;

c.   Whether the arbitration clause contained in Defendant's Terms of Service applies to Class Members and is unconscionable;

d.   Whether Defendant's Terms of Service were adequately disclosed to Class Members;

e.   Whether Defendant's Terms of Service contain unconscionable and/or illusory terms and language;

f.   Whether Defendant obtained appropriate and timely approval from the FDA to market and sell its Saliva Kits;

g.   Whether Defendant's promises of health reports and risks were likely to mislead reasonable and relying consumers;

h.   Whether Class Members are entitled to restitution and other equitable relief requested herein; and

i.   Whether Class Members suffered damages and are entitled to damages.

49. ***Typicality.*** Plaintiff's claims are typical of Class Members' claims. Plaintiff and the Class Members sustained similar injuries as a direct result of purchasing the Saliva Kits in reliance on Defendant's deceptive advertising and without reliability of results.

50. ***Adequacy***. Plaintiff will fairly and adequately represent and protect Class Members' interests. Plaintiff has no interests antagonistic to Class Members. Plaintiff has retained counsel with experience prosecuting consumer class-action and complex litigation claims.

51. ***Superiority***. A class action is superior to all other available methods for fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

52. This action is appropriate. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards of conduct for Defendant under the laws alleged herein.

**FIRST CAUSE OF ACTION**
**California False Advertising Law**
**(CAL. BUS. & PROF. CODE §§ 17500 *et seq.*)**

53. Plaintiff re-alleges and incorporates by reference the allegations set forth in this Class Action Complaint.

54. Defendant is a "person" within the meaning of CAL. BUS. & PROF. CODE § 17506.

55. The TOC provides that "any disputes with 23andMe arising out of or relating to the Agreement ("Disputes") shall be governed by California law regardless of your country of origin or where you access 23andMe, and notwithstanding of any conflicts of law principles and the United Nations Convention for the International Sale of Goods."

56.     By representing to the general public, including Plaintiff and the putative Class Members, that its Saliva Kits allow consumers to "[l]earn hundreds of things about your health," "[f]ind out if your children are at risk for inherited conditions, so you can plan for the health of your family," "[a]rm your doctor with information on how you might respond to certain medications," and learn more about their susceptibility to certain diseases and conditions, Defendant engaged in false and misleading practices prohibited by the California False Advertising Law (CFAL).

57.     In addition to being false, Defendant's advertisements and representations are also misleading and have the capacity, likelihood, and tendency to deceive and confuse consumers, including Plaintiff and the putative Class Members.

58.     Defendant knew, or would have known with the exercise of reasonable care that its advertisements and representations about the benefits of its Saliva Kits were false and misleading.

59.     Defendant made these false and misleading advertisements and misrepresentations with the intent of inducing consumers to purchase the Saliva Kits.

60.     Plaintiff purchased a Saliva Kit in reliance on Defendant's false and misleading advertisements and representations about the product. Plaintiff would have foregone purchasing Defendant's product had he known that the Saliva Kits were unreliable and did not possess the health and other benefits that Defendant's advertisements attributed to it.

61.     As a result of the foregoing acts, omissions, and practices, Plaintiff and the putative Class Members have suffered actual damages as described herein.

62.     Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiff seeks an order of this Court enjoining Defendant from continuing with the advertisements and

1  representations about its Saliva Kits and requests an order awarding Plaintiff and the putative

2  Class Members restitution of the money wrongfully acquired by Defendant.

**SECOND CAUSE OF ACTION**
**Violation of California Unfair Competition Law**
**CAL. BUS. & PROF. CODE § 17200, *et seq.***
**("unlawful" element)**

6  63.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this

7  Class Action Complaint.

8  64.    Defendant is a "person" within the meaning of CAL. BUS. & PROF. CODE §

9  17201.

10  65.    Defendant unfairly, unlawfully, deceptively, and misleadingly represented what

11  the Saliva Kits could do. Defendants boasted that the kits would allow consumers to "[l]earn

12  hundreds of things about your health," "[f]ind out if your children are at risk for inherited

13  conditions, so you can plan for the health of your family," and "[d]ocument your family health

14  history, track inherited conditions, and share the knowledge," and learn about various diseases.

15  To the contrary, the Saliva Kits do none of those things and the results it provides are not

16  supported by any scientific evidence or data.

17  66.    Plaintiff and the putative class purchased Saliva Kits in reliance on Defendant's

18  unfair, unlawful, deceptive, and misleading representations about the product. Plaintiff would

19  have foregone purchasing Defendant's product had he known that the Saliva Kit was unreliable

20  and did not possess the health and other benefits that Defendant's advertisements claimed.

21  67.    Defendant's business practices, as alleged herein, are unlawful because they

22  violate the Federal Food, Drug and Cosmetic Act and California law.

23  68.    As a result of the foregoing acts, omissions, and practices, Plaintiff and the

24  putative Class Members have suffered actual damages as described herein and are entitled to

1   recover such damages, together with punitive damages, equitable relief, injunctive relief and

2   reasonable attorneys' fees.

3           69.     Pursuant to Section 17203 of the California Business & Professions Code,

4   Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage, use, or

5   employ its unfair and fraudulent practice of advertising the sale and use of the Products and

6   making false claims about the Saliva Kits.

7                               **THIRD CAUSE OF ACTION**
                    **Violation of California Unfair Competition Law**
8                   **CAL. BUS. & PROF. CODE § 17200, *et seq*.**
                       **("unfair" and "fraudulent" elements)**
9

10          70.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this

11  Class Action Complaint.

12          71.     Plaintiff purchased a Saliva Kit in reliance on Defendant's false and misleading

13  advertisements and representations about the product. Plaintiff would not have purchased

14  Defendant's products had he known that the Saliva Kit was unreliable and did not possess the

15  suggested benefits that Defendant's advertisements claimed it has.

16          72.     Defendant's false and misleading representations about the health and other

17  benefits of its Saliva Kits violate long standing public policy in the United States and California

18  prohibiting businesses from claiming a product will provide health benefits without

19  substantiating scientific evidence and/or data.

20          73.     Defendant's false promise that the Saliva Kits will help its customers determine

21  if their "children are at risk for inherited conditions" and "[u]nderstand [thei]r genetic health

22  risks" is improper and unfounded.

23

24

CLASS ACTION COMPLAINT                                                          17 of 26

74.     Defendant knew or should have known that its claims about the Saliva Kits were fraudulent and likely to deceive the public, including Plaintiff and the putative Class Members, into believing that the Saliva Kits have uses and benefits that they do not possess.

75.     Plaintiff purchased a Saliva Kit in reliance on Defendant's unfair and fraudulent representations about the kits. Plaintiff would have foregone purchasing Defendant's product had he known that the Saliva Kit was unreliable and did not possess the health and other benefits that Defendant's advertisements attributed to it.

76.     Plaintiff and the putative Class Members' injuries are substantial and not outweighed by any real benefits to consumers or competition. Plaintiff and the Class Members could not reasonably have avoided the information because Defendant intentionally mislead the consuming public by means of the claims made with respect to the Saliva Kits as set forth herein.

77.     In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition; unfair, deceptive, untrue, or misleading advertising; and an unlawful business practice within the meaning of the California law.

78.     Defendant's wrongful business practices and procedures constituted, and constitute, a continuing course of conduct of unfair competition.

79.     As a result of the foregoing acts, omissions, and practices, Plaintiff and the putative Class Members have suffered actual damages as described herein.

80.     Pursuant to Section 17203 of the California Business & Professions Code, Plaintiff and the putative Class Members seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unfair and fraudulent practice of advertising the sale

and use of the Saliva Kits products. Likewise, Plaintiff and the putative Class Members seek an order requiring Defendant to cease making the unfair and fraudulent claims about its Saliva Kits that are described herein. Plaintiff also requests an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's false and misleading representations.

**FOURTH CAUSE OF ACTION**
**Violations of California Consumer Legal Remedies Act**
**Cal. Civ. Code §§ 1750 *et seq.***

81.     Plaintiff re-alleges and incorporates by reference the allegations set forth supra in this Class Action Complaint.

82.     Defendant is a "person" within the meaning of Cal. Civ. Code § 1761.

83.     Plaintiff and the putative Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761.

84.     Plaintiff purchased a Saliva Kit from Defendant for personal, family or household purposes. The purchase of the Saliva Kits by Plaintiff and the putative Class Members were and are "transactions" within the meaning of Cal. Civ. Code § 1761.

85.     Defendant's marketing, labeling, advertising, and sales of the Saliva Kits violated the CLRA in at least the following respects:

a.   Defendant represented that the Saliva Kits have characteristics, ingredients, uses, and benefits which it does not have;

b.   Defendant represented that the Saliva Kits are of a particular standard, quality, or grade, which they are not;

c.   Defendant advertised the Saliva Kits with an intent not to sell the Saliva Kits as advertised; and

1        d.  Defendant represented that the subject of the sale of the Saliva Kits has been

2        supplied in accordance with a previous representation when it has not.

3        86.    Defendant's actions as described herein were done with conscious disregard of

4 Plaintiff's and the Class Members' rights, and Defendant was wanton and malicious in its

5 concealment of the same.

6        87.    Defendant's wrongful business practices constituted, and constitute, a continuing

7 course of conduct in violation of the CLRA because Defendant is still representing that the

8 Saliva Kits has characteristics and abilities which it does not have.

9        88.    Pursuant to Civil Code § 1782, Plaintiff will notify Defendant in writing by

10 certified mail of the alleged violations of section 1770 and demand that the same be corrected.

11       89.    Any waiver of a claim under the CLRA by Plaintiff and/or the putative Class

12 Members is unenforceable and void.

13       90.    As a result of the foregoing acts, omissions, and practices, Plaintiff and the

14 putative Class Members have suffered actual damages as described herein, and these Class

15 Members are entitled to recover such damages, together with punitive damages, equitable relief,

16 injunctive relief, diminution of value, and reasonable attorneys' fees.

17
**FIFTH CAUSE OF ACTION**
**Deceit by Concealment**
18
**CAL. CIV. CODE §§ 1709, 1710**

19       91.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this

20 Class Action Complaint.

21       92.    Defendant made material representations and omissions to the general public,

22 including Plaintiff and the putative Class Members about the Saliva Kits that were false and

23 misleading.

24

CLASS ACTION COMPLAINT                                         20 of 26

93.     Defendant knew that its representations about the Saliva Kits were untrue or it did not have sufficient knowledge to warrant belief that it was true. Defendant made these false representations with intent to induce Plaintiff and the putative Class Members to act in reliance thereon.

94.     Defendant willfully deceived Plaintiff and the putative Class Members by concealing the true facts concerning the Saliva Kits. Defendant knew in advance of Plaintiff and the Class Members' use of the Saliva Kits and of the lack of scientific validity associated with the Saliva Kits

95.     Plaintiff and the putative Class Members reasonably believed that Defendant's representations about the Saliva Kits were true, and in reliance on those representations, Plaintiff and the putative Class Members purchased a Saliva Kit from Defendant.

96.     Plaintiff would have foregone purchasing Defendant's product had he known that the Saliva Kit was unreliable and did not possess the health and other benefits that Defendant's advertisements attributed to it.

97.     As a result of the foregoing acts, omissions, and practices, Plaintiff and the putative Class Members have suffered actual damages as described herein, and these Class Members are entitled to recover such damages, together with punitive damages, equitable relief, injunctive relief and reasonable attorneys' fees.

**SIXTH CAUSE OF ACTION**
**Breach of Warranty of Merchantability and**
**Fitness for a Particular Purpose**

98.     Plaintiff re-alleges and incorporates by reference the allegations set forth in this Class Action Complaint.

99.     Defendant developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce the

CLASS ACTION COMPLAINT                                                              21 of 26

1   Saliva Kits and, in the course of same conduct, directly advertised or marketed the Saliva Kits

2   to the FDA and consumers.

3      100. Defendant impliedly warranted that its Saliva Kits were of merchantable quality

4   and fit for the ordinary, common and intended uses for which the product was sold. Specifically,

5   Defendant falsely impliedly warranted that the Saliva Kits could be used to, among other things,

6   identify genetic health risks, and find out if consumers' children are at risk for inherited

7   conditions.

8      101. Defendant knew, or had reason to know that consumers, including Plaintiff and

9   the putative Class Members, purchased the Saliva Kits for purposes described above.

10     102. Defendant knew, or had reason to know that consumers, including Plaintiff and

11  the putative Class Members, were relying on its skill and judgment to select or furnish a product

12  that was suitable for the particular purposes.

13     103. Defendant breached its implied warranties of the Saliva Kits product sold to

14  Plaintiff and the putative Class Members because the product was not fit for the particular

15  purposes described above.

16     104. As a direct and foreseeable result of the foregoing acts, omissions, and practices,

17  Plaintiff and the putative Class Members have suffered actual damages as described herein, and

18  these Class Members are entitled to recover such damages, together with punitive damages,

19  equitable relief, injunctive relief, diminution of value, reasonable attorneys' fees, costs of suit,

20  and such other relief set forth herein.

21  **SEVENTH CAUSE OF ACTION**<br>**Negligent Misrepresentation**

22

23     105. Plaintiff re-alleges and incorporates by reference the allegations set forth in this

24  Class Action Complaint.

106.     Defendant made misrepresentations to Plaintiff and the putative Class Members, including without limitation, the misrepresentation that the Saliva Kits were effective, scientifically sound and valid, and could provide consumers with reliable health-related information.

107.     Defendant made the foregoing representations without reasonable grounds for believing them to be true. These representations were made directly by Defendant and its authorized agents on the Saliva Kits packaging and in publications and other written materials directed to the public with the intention of inducing reliance and the purchase and use of the Saliva Kits.

108.     The representations by Defendant were in fact false and made with the intention of inducing reliance resulting in the purchase and use of the Saliva Kits.

109.     In reliance on the above misrepresentations by Defendant, Plaintiff and the putative Class Members were induced to purchase and to use the Saliva Kits. If Plaintiff and the Class Members had known of the true facts and the facts concealed by Defendant, Plaintiff would not have purchased or used the Saliva Kits.

110.     Plaintiff's reliance on the misrepresentations by Defendant was justified and reasonable in that such misrepresentations were made by individuals and entities that held themselves out as experts in the field of DNA testing and were in a position to know the actual facts.

111.     As a result of the foregoing acts, omissions, and practices, Plaintiff and the putative Class Members have suffered actual damages as described herein, and these Class Members are entitled to recover such damages, together with punitive damages, equitable relief, injunctive relief, diminution of value, reasonable attorneys' fees, costs of suit, and such other relief set forth below.

**EIGHTH CAUSE OF ACTION**
**Unjust Enrichment**

112.    Plaintiff re-alleges and incorporates by reference the allegations set forth in this Class Action Complaint.

113.    As a result of their unlawful conduct described above, Defendant was unjustly enriched.

114.    Defendant has benefited from their unlawful acts and it would be inequitable for Defendant to be permitted to retain any of the ill-gotten gains resulting from payments made by Plaintiff and the putative Class Members in reliance on their false, misleading, and unlawful representations about the health and other benefits of the Saliva Kits.

115.    Plaintiff and the putative Class Members' are entitled to the amount of Defendant's ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct.

116.    Plaintiff and Class Members may have no adequate other remedy at law.

**PRAYER FOR RELIF**

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

1.    For an order certifying that the action may be maintained as a class action, certifying Plaintiff as representative of the Class, and designating his attorneys as Class counsel;

2.    For an award of equitable relief as follows:

a.    Enjoining Defendant from making any claims for the Saliva Kits found to violate the California law as it is defined by and coterminous with FDA rules, regulations and pronouncements, as set forth above,

b.      Requiring Defendant to make full restitution of all monies wrongfully

obtained as a result of its conduct,

3.      For an award of attorneys' fees,

4.      For actual damages in an amount to be determined at trial,

5.      For actual, statutory, and punitive damages as may be provided for by statute if

the demanded corrections do not occur within the thirty (30) day notice period;

6.      Costs of this suit;

7.      Pre- and post-judgment interest on any amounts awarded; and

8.      For such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.


DATED: December 9, 2013                          AUDET & PARTNERS, LLP


By:   /s/ Dana M. Isaac

Michael McShane (SB 127944)
Dana M. Isaac (SB 278848)
AUDET & PARTNERS, LLP
221 Main Street. Suite 1460
San Francisco, CA 94105
Telephone: (415)568-2555
Facsimile: (415)568-2556
mmcshane@audetlaw.com
disaac@audetlaw.com

Sandra W. Cuneo (SB 110388)
CUNEO GILBERT & LADUCA, LLP
11620 Wilshire Boulevard, Suite 900
Los Angeles, CA 90025
Telephone: (310) 582-5939
Facsimile: (310) 582-5943
scuneo@cuneolaw.com

CLASS ACTION COMPLAINT                                              25 of 26

Charles J. LaDuca (*pro hac vice* to be filed)
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
charles@cuneolaw.com

Robert K. Shelquist (*pro hac vice* to be filed)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Ave., S., Suite 2200
Minneapolis, MN 55401-2179
Telephone: (612) 339-6900
Facsimile: (612)339-0981
rkshelquist@locklaw.com

CLASS ACTION COMPLAINT                                           26 of 26