ROBERT P. VARIAN (SBN 107459)
rvarian@orrick.com
JAMES N. KRAMER (SBN 154709)
jkramer@orrick.com
M. TODD SCOTT (SBN 226885)
tscott@orrick.com
ALEXANDER K. TALARIDES (SBN 268068)
atalarides@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:	(415) 773-5700
Facsimile:	(415) 773-5759

Attorneys for Defendant 23andMe, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re 23ANDME, INC. CONSUMER PRODUCTS LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Lead Case No. 5:13-cv-05682-LHK<br><br>(Consolidated with Case Nos. 5:14-cv-00294-LHK, 5:14-cv-00429-LHK, 5:14-cv-01167-LHK, 5:14-cv-001191-LHK, 5:14-cv-01258-LHK, 5:14-cv-01348-LHK, 5:14-cv-01455-LHK)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT 23ANDME, INC.'S OMNIBUS MOTION TO COMPEL ARBITRATION**<br><br>Date:	June 19, 2014<br>Time:	1:30 p.m.<br>Judge:	Hon. Lucy H. Koh<br>Courtroom:	8, 4th Floor |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................ 1

FACTUAL OVERVIEW ............................................................................................................. 1

    I.    23andMe And Its Personal Genome Service ................................................................... 1

    II.    Plaintiffs' Claims ............................................................................................................ 2

    III.    Plaintiffs Accepted 23andMe's Terms Of Service, which included an arbitration agreement ........................................................................................................................ 3

    IV.    The Arbitration Agreement Accepted In The TOS ........................................................ 4

    V.    An Arbitration Asserting The Same Claims Asserted In The Consolidated Actions, On Behalf Of The Same Alleged Class, Is Currently Proceeding Pursuant To The Arbitration Agreement ..................................................................................................... 4

ARGUMENT ................................................................................................................................ 5

    I.    Any Dispute Regarding The Scope Or Enforceability Of The Arbitration Agreement Must Be Decided By The Arbitrator ............................................................. 6

    II.    Any Argument That Plaintiffs' Claims Are Not Arbitrable Would Lack Merit In Any Event ....................................................................................................................... 8

        A.    The Arbitration Agreement Clearly Encompasses Plaintiffs' Claims .................. 8

        B.    The Arbitration Agreement Is Enforceable ........................................................... 9

    III.    The Court Should Dismiss, Rather Than Stay, These Actions ...................................... 11

CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013) ................................................................................................... 5

*Am. Software, Inc. v. Ali*,
    46 Cal. App. 4th 1386 (1996) ....................................................................................... 11

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) ........................................................................................ 5, 9, 11

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ..................................................................................................... 10

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
    647 F.3d 914 (9th Cir. 2011) ......................................................................................... 8

*Clarium Capital Mgmt. LLC v. Choudhury*,
    2009 WL 331588 (N.D. Cal. Feb. 11, 2009) ................................................................. 7

*Cox v. Ocean View Hotel Corp.*,
    533 F.3d 1114 (9th Cir. 2008) ....................................................................................... 6

*Dauod v. Ameriprise Fin. Servs., Inc.*,
    2011 WL 6961586 (C.D. Cal. Oct. 12, 2011) .............................................................. 12

*Day v. Microsoft Corp.*,
    2014 WL 243159 (W.D. Wash. Jan. 22, 2014) ............................................................. 6

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985) ....................................................................................................... 5

*Dean Witter Reynolds, Inc. v. Super. Ct.*,
    211 Cal. App. 3d 758 (1989) ....................................................................................... 10

*Fadal Machining Ctrs., LLC v. Compumachine, Inc.*,
    461 F. App'x 630 (9th Cir. 2011) .................................................................................. 7

*Grabowski v. C.H. Robinson Co.*,
    817 F. Supp. 2d 1159 (S.D. Cal. 2011) ....................................................................... 11

*Guadagno v. E*Trade Bank*,
    592 F. Supp. 2d 1263 (C.D. Cal. 2008) ......................................................................... 6

*Guidewire Software, Inc. v. Chookaszian*,
    2012 WL 5379589 (N.D. Cal. Oct. 31, 2012) ............................................................... 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hancock v. AT & T Co., Inc.*,
　701 F.3d 1248 (10th Cir. 2012) ................................................................................................ 6

*Izzi v. Mesquite Country Club*,
　186 Cal. App. 3d 1309 (1986) ................................................................................................ 11

*Kilgore v. KeyBank, Nat'l Ass'n*,
　718 F.3d 1052 (9th Cir. 2013) .................................................................................................. 9

*Kimble v. Rhodes Coll., Inc.*,
　2011 WL 2175249 (N.D. Cal. June 2, 2011) ........................................................................... 8

*KPMG LLP v. Cocchi*,
　132 S. Ct. 23 (2011) ................................................................................................................. 5

*Lane v. Francis Capital Mgmt. LLC*,
　224 Cal. App. 4th 676 (2014) ................................................................................................. 10

*Lewis v. UBS Fin. Servs. Inc.*,
　818 F. Supp. 2d 1161 (N.D. Cal. 2011) .................................................................................. 12

*Lozano v. AT&T Wireless Servs.*,
　504 F.3d 718 (9th Cir. 2007) .................................................................................................... 9

*Mance v. Mercedes-Benz USA*,
　901 F. Supp. 2d 1147 (N.D. Cal. 2012) .................................................................................. 11

*Meyer v. T-Mobile USA, Inc.*,
　836 F. Supp. 2d 994 (N.D. Cal. 2011) ...................................................................................... 9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
　473 U.S. 614 (1985) ................................................................................................................. 5

*Morris v. Redwood Empire Bancorp.*,
　128 Cal. App. 4th 1305 (2005) ............................................................................................... 11

*Mortensen v. Bresnan Commc'ns, LLC*,
　722 F.3d 1151 (9th Cir. 2013) .............................................................................................. 5, 9

*In re Online Travel Co.*,
　953 F. Supp. 2d 713 (N.D. Tex. 2013) ..................................................................................... 6

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
　724 F.3d 1069 (9th Cir. 2013) .................................................................................................. 7

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Peng v. First Republic Bank*,
  219 Cal. App. 4th 1462 (2013) .................................................................................................. 10

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) .............................................................................................................. 11

*Preston v. Ferrer*,
  552 U.S. 346 (2008) ................................................................................................................... 5

*Rahimi v. Nintendo of Am., Inc.*,
  936 F. Supp. 2d 1141 (N.D. Cal. 2013) ..................................................................................... 5

*Rent-A-Center, W., Inc. v. Jackson*,
  130 S. Ct. 2772 (2010) ..................................................................................................... 6, 7, 10

*Roman v. Super. Ct.*,
  172 Cal. App. 4th 1462 (2009) .................................................................................................. 10

*Sherman v. AT & T Inc.*,
  2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) ............................................................................. 6

*SI V, LLC v. FMC Corp.*,
  223 F. Supp. 1059 (N.D. Cal. 2002) ........................................................................................ 10

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ..................................................................................................... 9

*Sparling v. Hoffman Const. Co., Inc.*,
  864 F.2d 635 (9th Cir. 1988) ................................................................................................... 12

*Swift v. Zynga Game Network, Inc.*,
  805 F. Supp. 904 (N.D. Cal. 2011) ............................................................................................ 6

*Visa USA, Inc. v. Maritz Inc.*,
  2008 WL 744832 (N.D. Cal. Mar. 18, 2008) ............................................................................. 7

*Xinhua Holdings Ltd. v. Electronic Recyclers Int'l, Inc.*,
  2013 WL 6844270 (E.D. Cal. Dec. 26, 2013) ......................................................................... 12

*Yahoo! Inc. v. Iverson*,
  836 F. Supp. 2d 1007 (N.D. Cal. 2011) ..................................................................................... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**STATUTES**

9 U.S.C.
  § 2 .................................................................................................................................. 3, 5
  § 3 ................................................................................................................................. 6, 12
  § 4 ................................................................................................................................... 5, 6

**RULES**

California Civil Code Procedure
  § 1670.5(a) ........................................................................................................................ 9

Federal Rules of Civil Procedure
  Rule R-1(a) ....................................................................................................................... 7
  Rule R-7(a) ....................................................................................................................... 6

# INTRODUCTION

By this motion Defendant 23andMe, Inc. ("23andMe" or the "Company") seeks enforcement of an arbitration agreement that indisputably covers all claims asserted in these consolidated actions. Plaintiffs'[1] attempt to circumvent arbitration appears to be part of a broader contest among counsel to secure a leadership position in the dispute. In any event, the resort to District Court litigation cannot be justified under the facts and controlling law, and would generate duplicative and enormously wasteful litigation of identical claims that are currently being arbitrated in an American Arbitration Association ("AAA") proceeding that was properly instituted in conformance with the arbitration agreement. The AAA arbitration is at an early administrative phase, and 23andMe has no objection to Plaintiffs joining that proceeding.

Based on a review of the recently filed motion to enjoin the AAA arbitration and case management statements, it appears that Plaintiffs will attempt to resist arbitration via arguments directed at the enforceability of the underlying arbitration clause. As demonstrated below, any such arguments would themselves have to be referred to arbitration for determination by the arbitrator, and would lack merit in any event.

# FACTUAL OVERVIEW

## I. 23ANDME AND ITS PERSONAL GENOME SERVICE

23andMe is a personal genetics company dedicated to helping consumers access and understand their personal genetic data in a cost-effective manner, and to advancing scientific research in human genetics. Declaration of Alexander K. Talarides in Support of Defendant's Motion to Compel Arbitration ("Talarides Decl."), Ex. A. The Company was founded in 2006 with backing from Google and prominent health science companies, employs a staff of scientists, participates in medical school and research programs, and has a scientific advisory board composed of recognized experts in human genetics, bioinformatics and computer science. *Id.*, Exs. A-E.

---

[1] "Plaintiffs" collectively refers to all of the named plaintiffs in these consolidated actions, *i.e.*, David Tompkins, Deena Patel Aeron, Virgil Jose, Jeanne Jose, Fernando Velloso, Franne Einberg, Kyle Dilger, Toni Guthrie, Ben Martin, Carrie Martin, Kryssa Cable, Gary A. Newland, Patrick Spreter, and Vernon Stanton.

1       The Personal Genome Service (the "PGS") that is the subject of Plaintiffs' claims was
2  named Invention Of The Year by *Time* Magazine in 2008.  *Id.*, Ex. F.  Customers purchase the
3  PGS on the Company's website, and submit their DNA via saliva sample that is tested in a
4  certified laboratory using state of the art equipment.  *Id.*, Ex. A.  Based on a reading of nearly
5  1,000,000 points on the customer's genome, the Company provides raw genetic data and a variety
6  of related information that is accessed on the 23andMe website.  *Id.*, Exs. A, H.

7       The ancestry component of the PGS enables customers to (among other things) trace their
8  lineage back 10,000 years, learn what parts of the world their ancestors came from, determine
9  their percentage of Neanderthal ancestry, and identify DNA relatives.  *Id.*, Ex. I.  The health
10 information component provides high-level data regarding genetic traits and health risks based on
11 extensive scientific literature, for informational purposes only.  *Id.*, Ex. H.  As the Company's
12 website made explicitly clear, 23andMe did not provide or purport to provide customers with
13 medical advice or diagnoses, and cautioned customers not to use the health information for
14 diagnostic purposes.  *Id.*, Ex. J (§§ 5-6).

15 **II.   PLAINTIFFS' CLAIMS**

16       As even a cursory review of Plaintiffs' individual complaints makes clear, all of Plaintiffs'
17 claims are based on the purchase and use of the PGS, which Plaintiffs obtained pursuant to the
18 TOS.  *See, e.g.*, *See* Talarides Decl., Ex. K (*Tompkins*) ¶¶ 1-3, 9-16; *id.*, Ex. L (*Aeron*) ¶¶ 1-4, 30-
19 45; *id.*, Ex. M (*Dilger*) ¶¶ 1-23; *id.*, Ex. N (*Guthrie*) ¶¶ 1-4, 40-44; *id.*, Ex. O (*Newland*) ¶¶ 1, 25-
20 26; *id.*, Ex. P (*Spreter*) ¶¶ 1-7, 11; *id.*, Ex. Q (*Stanton*) ¶¶ 1-7, 35-41; *id.*, Ex. R (*Martin*) ¶¶ 1-4,
21 8-10.

22       More specifically, Plaintiffs' claims are based primarily on a November 22, 2013 letter
23 from the Food and Drug Administration (the "FDA letter"), in which the FDA expressed
24 dissatisfaction with the level of communication by the Company, and with the testing
25 documentation that had been submitted to that point.  Following the FDA letter, 23andMe
26 stopped providing health-related information to new customers; the FDA agreed that the
27 Company could continue to provide raw genetic data and ancestry information to new customers;
28 and that Plaintiffs and other customers who purchased the PGS before November 22, 2013 could

1   continue to have access to their health-related information, but not receive updates.  23andMe has

2   continued to meet with the FDA, and the FDA has since withdrawn its November 22 letter.

3   **III.   PLAINTIFFS ACCEPTED 23ANDME'S TERMS OF SERVICE, WHICH INCLUDED AN ARBITRATION AGREEMENT**

4

5         Like all customers of 23andMe, Plaintiffs purchased and used the PGS pursuant to the

6   Terms of Service ("TOS") that were posted on the Company's website.  Declaration of Kent

7   Hillyer in Support of Defendant's Motion to Compel Arbitration ("Hillyer Decl.") ¶¶ 2-7.  The

8   TOS are available at several locations on the website (*id.* ¶¶ 4-5 & Exs. A-C), and, as the TOS

9   explained, constituted a legal contract setting forth the terms and conditions under which

10  Plaintiffs obtained access to the PGS.  Talarides Decl., Ex. J (§ 2).  One of the terms and

11  conditions under which Plaintiffs purchased and used the PGS was an agreement to arbitrate all

12  disputes related to the PGS (the "Arbitration Agreement").

13        Agreement to the TOS and Arbitration Agreement was a necessary and integral part of the

14  process through which Plaintiffs purchased and received the PGS.  Hillyer Decl. ¶¶ 2-3, 4-5, 7.

15  Before creating an account, Plaintiffs clicked on a button located immediately next to a statement

16  that read: "Yes, I have read and agree to the **Terms of Service** and **Privacy Statement**."  *Id.* ¶ 4

17  & Ex. A.  Customers cannot complete the account-creation process without viewing this screen,

18  and accepting.  *Id.* ¶ 4.  After creating their accounts, Plaintiffs (and 23andMe's other customers)

19  affirmatively indicated their acceptance of the TOS a second time when registering their DNA

20  collection kits.  *Id.* ¶ 5.  The screen used in the kit-registration process contained the conspicuous

21  heading: "**To continue, accept our terms of service**."  *Id.* ¶ 5 & Ex. B.  Plaintiffs could not have

22  registered their DNA collection kits or received the PGS without viewing this screen, which

23  further stated:  "When you sign up for 23andMe's service you agree to our Terms of Service.

24  Click **here** to read our full Terms of Service."  *Id*.  Like all other 23andMe customers, Plaintiffs

25  then reconfirmed their assent to the TOS by clicking on an "**I ACCEPT THE TERMS OF**

26  **SERVICE**" button.  *Id.*  Similarly, the TOS explained:  "In order to use the Services, you must

27  first agree to the TOS.  You may not use the Services if you do not accept the TOS."  Talarides

28  Decl., Ex. J (§ 2).

3   MP&A IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION TO COMPEL ARBITRATION (LEAD CASE NO. 5:13-cv-05682-LHK)

OHSUSA:757701384.2

**IV.  THE ARBITRATION AGREEMENT ACCEPTED IN THE TOS**

The Arbitration Agreement accepted by Plaintiffs in the TOS provided:

> **Applicable law and arbitration.** Except for any disputes relating to intellectual property rights, obligations, or any infringement claims, any disputes with 23andMe arising out of or relating to the Agreement (**"Disputes"**) shall be governed by California law regardless of your country of origin or where you access 23andMe, and notwithstanding of any conflicts of law principles and the United Nations Convention for the International Sale of Goods. **Any Disputes shall be resolved by final and binding arbitration under the rules and auspices of the American Arbitration Association, to be held in San Francisco, California,** in English, with a written decision stating legal reasoning issued by the arbitrator(s) at either party's request, and with arbitration costs and reasonable documented attorneys' costs of both parties to be borne by the party that ultimately loses. Either party may obtain injunctive relief (preliminary or permanent) and orders to compel arbitration or enforce arbitral awards in any court of competent jurisdiction.

Talarides Decl., Ex. J (§ 28(b)) (third emphasis added).

**V.  AN ARBITRATION ASSERTING THE SAME CLAIMS ASSERTED IN THE CONSOLIDATED ACTIONS, ON BEHALF OF THE SAME ALLEGED CLASS, IS CURRENTLY PROCEEDING PURSUANT TO THE ARBITRATION AGREEMENT**

Not surprisingly, sophisticated counsel who regularly file consumer class actions in federal courts throughout the United States have recognized that the Arbitration Agreement forecloses that option here.  In December 2013, Cotchett, Pitre & McCarthy, LLP filed a Class Action Arbitration Complaint with the AAA, pursuant to the Arbitration Agreement.  A copy of the AAA complaint is attached to the Talarides Declaration as Exhibit S.  The claims and allegations of the AAA complaint are virtually identical to those asserted by Plaintiffs in their attempt to evade the Arbitration Agreement.  Talarides Decl. ¶ 20.  The arbitration has been assigned a nationally recognized arbitrator – Mr. Yaroslav Sochynsky, Esq. – and is in the initial phases of administration.  *Id.*

Apart from the requirements of the Arbitration Agreement, it would be monumentally wasteful to have multiple proceedings simultaneously adjudicating the same claims based on the same alleged facts.  23andMe has no objection to Plaintiffs being added as named plaintiffs in the AAA arbitration.

# ARGUMENT

The law and policies favoring arbitration are established beyond the need for extensive citation, and emanate from the Federal Arbitration Act ("FAA").[2] As the Supreme Court has repeatedly noted, the FAA expresses an "'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *see also Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (the FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution").

To further the national policy favoring arbitration, the FAA permits a party to a written agreement for arbitration to petition a United States district court for an order compelling the parties to arbitrate pursuant to the terms of their agreement: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

Abundant Supreme Court authority requires courts to "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (citation omitted). As the Ninth Circuit recently emphasized, courts must "place arbitration provisions 'on the same footing' as all other contractual provisions," and "'ensur[e] that private arbitrations are enforced." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1159 (9th Cir. 2013). The "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011).

Accordingly, when an arbitration agreement exists, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts ***shall*** direct the parties to proceed to arbitration." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)

---

[2] The TOS and Arbitration Agreement are subject to the FAA, as they constitute "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see, e.g.*, *Rahimi v. Nintendo of Am., Inc.*, 936 F. Supp. 2d 1141, 1143 (N.D. Cal. 2013) ("As 'a contract evidencing a transaction involving commerce,' the EULA is subject to the Federal Arbitration Act." (citing 9 U.S.C. § 2)).

(italics in original) (citing 9 U.S.C. §§ 3, 4). As demonstrated at pages 3-4 above, an arbitration agreement indisputably exists in this case.[3]

## I. ANY DISPUTE REGARDING THE SCOPE OR ENFORCEABILITY OF THE ARBITRATION AGREEMENT MUST BE DECIDED BY THE ARBITRATOR

Based on a review of the motion to enjoin the arbitration recently filed by counsel for several Plaintiffs, 23andMe anticipates that some Plaintiffs may seek to evade arbitration by questioning the scope or enforceability of the Arbitration Agreement, including by making "unconscionability" arguments. Any such effort would be unavailing because, as this Court and many others have held, under the AAA rules incorporated into the Arbitration Agreement such questions are to be decided by the arbitrator.

As the Supreme Court has held, parties must "arbitrate [such] 'gateway' questions of 'arbitrability,'" including whether the arbitration agreement is unconscionable, if the parties have agreed to do so. *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 & n.1 (2010) (holding that arbitrator, not the courts, must decide whether an arbitration agreement is unconscionable or unenforceable).

Plaintiffs expressly agreed to arbitrate "any disputes with 23andMe arising out of or relating to the" TOS "under the rules and auspices of the American Arbitration Association." Talarides Decl., Ex. J (§ 28(b)). That language "incorporates the applicable rules of the AAA into the terms of" the Arbitration Agreement. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1122 (9th Cir. 2008) (citations omitted). Rule R-7(a) of the incorporated AAA Commercial Arbitration Rules provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the

---

[3] Electronic agreements like the TOS and Arbitration Agreement -- *i.e.*, so-called "clickwrap" agreements that require consumers to expressly manifest assent to their terms by clicking an "accept" button in order to proceed with a transaction – are "common and 'have routinely been upheld.'" *Hancock v. AT & T Co., Inc.*, 701 F.3d 1248, 1256 (10th Cir. 2012). *See, e.g.*, *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 904, 908 (N.D. Cal. 2011); *Day v. Microsoft Corp.*, 2014 WL 243159, at *2 (W.D. Wash. Jan. 22, 2014); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 719 (N.D. Tex. 2013); *Sherman v. AT & T Inc.*, 2012 WL 1021823, at *3 (N.D. Ill. Mar. 26, 2012); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008).

1  arbitration agreement."[4]  Talarides Decl., Ex. T at p. 13.

2  In analyzing the situation presented here, this Court has twice held that reference to
3  arbitration under the AAA Rules requires that gateway questions regarding arbitrability be
4  referred to arbitration.[5]  *Guidewire Software, Inc. v. Chookaszian*, 2012 WL 5379589, at *4 (N.D.
5  Cal. Oct. 31, 2012) (Koh, J.) ("'The incorporation of the AAA rules in the arbitration agreement
6  is 'clear and unmistakable' evidence of the parties' intent to delegate the issue of arbitrability to
7  the arbitrator.'"); *Yahoo! Inc. v. Iverson*, 836 F. Supp. 2d 1007, 1012 (N.D. Cal. 2011) (Koh, J.)
8  ("Incorporation of the AAA rules by reference constitutes 'clear and unmistakable' evidence that
9  the parties intended to submit the question of arbitrability to the arbitrator").  Those decisions are
10 consistent with and supported by a large body of case law.

11 The Ninth Circuit and a host of other decisions in the Northern District of California have
12 reached the same result for the same reasons.  *See, e.g.*, *Oracle Am., Inc. v. Myriad Grp. A.G.*,
13 724 F.3d 1069, 1074-75 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has
14 determined that incorporation of the American Arbitration Association's (AAA) arbitration rules
15 constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."
16 (citations omitted)); *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 632
17 (9th Cir. 2011) (holding that "arbitration clause clearly and unmistakably delegated the questions
18 of arbitrability to the arbitrator" because it incorporated the AAA rules, "which provide that '[t]he
19 arbitrator shall have the power to rule on his or her own jurisdiction, including any objections
20 with respect to the existence, scope or validity of the arbitration agreement'"); *Clarium Capital
21 Mgmt. LLC v. Choudhury*, 2009 WL 331588, at *5 (N.D. Cal. Feb. 11, 2009) ("The incorporation
22 of the AAA rules in the arbitration agreement is 'clear and unmistakable' evidence of the parties'
23 intent to delegate the issue of arbitrability to the arbitrator."); *Visa USA, Inc. v. Maritz Inc.*, 2008

---

[4] The AAA Commercial Arbitration Rules would apply to Plaintiffs' claims.  *See* Talarides Decl., Ex. T at p. 10 (Commercial Arbitration Rule R-1(a): "The parties shall be deemed to have made these [Commercial Arbitration] rules a part of their arbitration agreement whenever they have provided for arbitration . . . by the AAA of a domestic commercial dispute without specifying particular rules.").

[5] The concept of arbitrability, of course, includes all aspects of validity, including unconscionability.  *Rent-A-Center*, 130 S. Ct. at 2777 n.1.

WL 744832, at *5 (N.D. Cal. Mar. 18, 2008) ("By the explicit incorporation of the AAA rules, the parties clearly and unmistakenly agreed that questions of arbitrability would be submitted to arbitration for resolution."); *Kimble v. Rhodes Coll., Inc.*, 2011 WL 2175249, at *3 (N.D. Cal. June 2, 2011) (holding that because arbitration provisions incorporated by reference the AAA rules, "[t]he arbitrator . . . and not th[e] Court, shall decide whether the arbitration provisions at issue are enforceable").

Put simply, any dispute regarding the Arbitration Agreement's scope and "the issue of unconscionability must be decided by the arbitrator." *Ireland v. Lear Capital, Inc.*, 2012 WL 6021551, at *3 (D. Minn. Dec. 4, 2012) (refusing to entertain challenges to arbitration agreement based on unconsionability because the agreement incorporated by reference the AAA rules); *see, e.g.*, *Valley Power Sys., Inc. v. Gen. Elec. Co.*, 2012 WL 665977, at *5 (C.D. Cal. Feb. 27, 2012) (same); *Madrigal v. New Cingular Wireless Servs., Inc.*, 2009 WL 2513478, at *6 (E.D. Cal. Aug. 17, 2009) (same).

## II. ANY ARGUMENT THAT PLAINTIFFS' CLAIMS ARE NOT ARBITRABLE WOULD LACK MERIT IN ANY EVENT

The fact that gateway questions of arbitrability are for the arbitrator – and must themselves be referred to arbitration – requires that the motion be granted. Because the merits of issues regarding the scope and enforceability of the Arbitration Agreement are for the arbitrator, they need not be discussed here or decided on this motion. It is nevertheless clear that such arguments present no obstacle to arbitration of Plaintiffs' claims.

### A. The Arbitration Agreement Clearly Encompasses Plaintiffs' Claims

There can be no serious dispute that Plaintiffs' claims fall within the scope of the Arbitration Agreement. The Agreement applies to "any disputes with 23andMe arising out of or relating to" the TOS. Talarides Decl., Ex. J (§ 28(b)). In the Ninth Circuit, that language is recognized as "broad and far reaching." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922 (9th Cir. 2011) ("[W]hen parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or relating to' the agreement."); *Chiron*, 207 F.3d at 1131

1  ("The parties' arbitration clause is broad and far reaching: 'Any dispute, controversy or claim
2  arising out of or relating to . . . this Agreement shall be settled by binding" arbitration).
3        The language used in the Arbitration Agreement thus "reaches every dispute between the
4  parties having a significant relationship to the contract and all disputes having their origin or
5  genesis in the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). That
6  includes disputes involving statutory and common law claims. *Meyer v. T-Mobile USA, Inc.*, 836
7  F. Supp. 2d 994, 1004 (N.D. Cal. 2011) (citing *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718,
8  725 (9th Cir. 2007)). To fall within the scope of the Arbitration Agreement, Plaintiffs' claims
9  "need only 'touch matters' covered by the [TOS] . . . and all doubts are to be resolved in favor of
10  arbitrability." *Simula*, 175 F.3d at 721.

11      **B.    The Arbitration Agreement Is Enforceable**

12        There is no basis to hold that the Arbitration Agreement is unenforceable on
13  unconscionability grounds. Under California law, an arbitration provision is unconscionable only
14  if it is "both procedurally and substantively unconscionable." *Kilgore v. KeyBank, Nat'l Ass'n*,
15  718 F.3d 1052, 1058 (9th Cir. 2013). The Arbitration Agreement here is neither.
16        Moreover, to the extent California unconscionability law "unduly burden[s] arbitration"
17  agreements, it is preempted by the FAA. *Farrow v. Fujitsu Am., Inc.*, --- F. Supp. 2d ---, 2014
18  WL 1396412, at *5 n.4 (N.D. Cal. Apr. 9, 2014) (Koh, J.) (quotations omitted; alteration in
19  original); *see Mortensen*, 722 F.3d at 1159 ("Any general state-law contract defense, based in
20  unconscionability or otherwise, that has a disproportionate effect on arbitration is displaced by the
21  FAA."). As the Supreme Court made clear in *Concepcion*, the FAA preempts any state-law rule
22  of unconscionability that has "a disproportionate impact on arbitration agreements," or "interferes
23  with fundamental attributes of arbitration." 131 S. Ct. at 1747-48; *see also Marquez v. Living*,
24  2014 WL 1379645, at *3 (N.D. Cal. Apr. 8, 2014) ("The court must apply a contractual defense,
25  like unconscionability, in the same way it would to any contract dispute.").
26        Even if the Arbitration Agreement had a clause determined to be unenforceable or
27  unconscionable, the clause can be severed and the balance of the Agreement enforced. *See, e.g.*,
28  Cal. Civ. Code § 1670.5(a) (unconscionable clauses may be severed and the remainder of the

contract enforced); *SI V, LLC v. FMC Corp.*, 223 F. Supp. 1059, 1063 (N.D. Cal. 2002) ("Since public policy dictates a strong preference for enforcement of arbitration agreements, many California courts have ruled in favor of severing unenforceable provisions from these agreements." (citations omitted)). The TOS reinforces these rules by providing: "If any portion of these TOS is found to be unenforceable, the remaining portion will remain in full force and effect." Talarides Decl., Ex. J (§ 28(j)).

It is equally clear that Plaintiffs cannot rely on other provisions of the TOS in making enforceability or unconscionability arguments directed at the Arbitration Agreement. Under the FAA, "an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006). Accordingly, a party challenging the enforceability of an arbitration provision must rely on grounds that relate specifically to the arbitration provision itself, and not another provision of the contract or the contract as a whole. *Rent-A-Center*, 130 S. Ct. at 2778. "[A] challenge to the validity of an agreement to arbitrate is to be decided without reference to the larger contract." *Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 843 (N.D. Cal. 2012) (emphasis added) (citing *Rent-A-Center*, 130 S. Ct. 2778).

Under California law, procedural unconscionability "requires oppression or surprise. Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 689 (2014) (quotations omitted).

The fact that the TOS can be considered a contract of "adhesion" (*i.e.*, a standardized contract that is offered on a take-it-or-leave-it basis) does not establish oppression.[6] *See, e.g.*, *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1471 & n.2 (2009); *Dean Witter Reynolds, Inc. v.*

---

[6] Nor can a procedural unconscionability defense be based on a failure to provide a copy of the applicable arbitration rules where, as here, the rules referenced in the arbitration provision are the AAA rules, which are readily available on the Internet and regarded as fair. *See, e.g.*, *Lane*, 224 Cal. App. 4th at 691 ("[T]he failure to attach a copy of the AAA rules did not render the agreement procedurally unconscionable. There could be no surprise, as the arbitration rules referenced in the agreement were easily accessible to the parties . . . on the Internet."); *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013) (plaintiff could not "identify any feature of the AAA rules that prevent fair and full arbitration" and so "the failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability").

*Super. Ct.*, 211 Cal. App. 3d 758, 769 (1989). Moreover, as the Supreme Court recognized in *Concepcion*, "the times in which consumer contracts were anything other than adhesive are long past." 131 S. Ct. at 1750. "The clear import of *Concepcion* . . . pushes against finding that an adhesive contract, without more, is *per se* procedurally unconscionable." *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1161 (N.D. Cal. 2012); *see also Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159, 1172 (S.D. Cal. 2011) ("In light of the Supreme Court's decision in *Concepcion*, . . . the Court does not find that the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability.").

Under California law, substantive unconscionability requires a showing that the contract "is overly harsh or so one-sided that it shocks the conscience." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 248 (2012). "The requirements for substantive unconscionability are not met when a contract term is merely unreasonable; rather, the term must be such an extreme departure from customary business practices that it shocks the conscience." *Am. Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391-93 (1996); *see also Morris v. Redwood Empire Bancorp.*, 128 Cal. App. 4th 1305, 1322 (2005) ("the phrases 'harsh,' 'oppressive,' and 'shock the conscience' are not synonymous with 'unreasonable'").

Plaintiffs cannot possibility demonstrate that the Arbitration Agreement is either an extreme departure from customary business practices, or that it shocks the conscience. The Arbitration Agreement is bilateral, incorporates the AAA rules, which courts have long held are "neutral and fair," *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1318 (1986), and allows 23andMe customers to avail themselves of California's "extremely consumer-friendly statutes," *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 485-86 (S.D. Cal. 2013), without regard to "any conflicts of law principles." Talarides Decl., Ex. J (§ 28(b)); *cf. Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) (a plaintiff's "consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place").

### III. THE COURT SHOULD DISMISS, RATHER THAN STAY, THESE ACTIONS

When claims asserted in a civil action are referred to arbitration, the FAA directs district courts to "stay the trial of the action until such arbitration has been had in accordance with the

11    MP&A IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION TO COMPEL ARBITRATION (LEAD CASE NO. 5:13-CV-05682-LHK)

OHSUSA:757701384.2

1  terms of the agreement." 9 U.S.C. § 3. "The Ninth Circuit, however, has held that courts have
2  discretion under 9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement."
3  *Lewis v. UBS Fin. Servs. Inc.*, 818 F. Supp. 2d 1161, 1169 (N.D. Cal. 2011) (citing *Sparling v.
4  Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988)); *see, e.g.*, *Dauod v. Ameriprise Fin.
5  Servs., Inc.*, 2011 WL 6961586, at *6 (C.D. Cal. Oct. 12, 2011) ("[C]ourts have discretion under
6  9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement.").

When, as in this case, all of the asserted claims are subject to arbitration, keeping the action open on the Court's docket is of no utility, and dismissal of the claims is appropriate. *See, e.g.*, *Xinhua Holdings Ltd. v. Electronic Recyclers Int'l, Inc.*, 2013 WL 6844270, at *11 (E.D. Cal. Dec. 26, 2013) ("[T]here is little utility in staying this case. The Court has determined that all of Plaintiffs' claims are subject to the arbitration clause of the STA, which makes dismissal a viable alternative to a stay."). The Court should therefore exercise its discretion to dismiss, rather than stay, these consolidated actions.

## CONCLUSION

The claims asserted in Plaintiffs' complaints must be resolved in arbitration, and are in fact being adjudicated in an existing arbitration that was initiated by prominent counsel in accordance with the Arbitration Agreement. Plaintiffs can easily join the existing arbitration, which is in the early phases of administration. What Plaintiffs cannot do is to pursue parallel duplicative proceedings in this Court. Accordingly, the Court should compel Plaintiffs to arbitrate their claims against 23andMe, and should dismiss these consolidated actions or, at a minimum, stay them pending completion of arbitration.

Dated: April 28, 2014                    ORRICK, HERRINGTON & SUTCLIFFE LLP

                                         */s/ Robert P. Varian*
                                         Robert P. Varian
                                         Attorneys for Defendant 23andMe, Inc.