1   ROBERT P. VARIAN (SBN 107459)
    rvarian@orrick.com
2   JAMES N. KRAMER (SBN 154709)
    jkramer@orrick.com
3   M. TODD SCOTT (SBN 226885)
    tscott@orrick.com
4   ALEXANDER K. TALARIDES (SBN 268068)
    atalarides@orrick.com
5   ORRICK, HERRINGTON & SUTCLIFFE LLP
    The Orrick Building
6   405 Howard Street
    San Francisco, CA  94105-2669
7   Telephone:    (415) 773-5700
    Facsimile:    (415) 773-5759
8

9   Attorneys for Defendant 23andMe, Inc.

10                UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13

14  In re 23ANDME, INC. CONSUMER          Lead Case No. 5:13-cv-05682-LHK
    PRODUCTS LITIGATION
15                                        (Consolidated with Case Nos. 5:14-cv-
                                          00294-LHK, 5:14-cv-00429-LHK, 5:14-
16  This Document Relates To:             cv-01167-LHK, 5:14-cv-001191-LHK,
                                          5:14-cv-01258-LHK, 5:14-cv-01348-
17      ALL ACTIONS                       LHK, 5:14-cv-01455-LHK)

18                                        **REPLY BRIEF IN SUPPORT OF**
                                          **DEFENDANT 23ANDME, INC.'S**
19                                        **OMNIBUS MOTION TO COMPEL**
                                          **ARBITRATION**
20
                                          Date:         June 19, 2014
21                                        Time:         1:30 p.m.
                                          Judge:        Hon. Lucy H. Koh
22                                        Courtroom:    8, 4th Floor

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

**Page**

3    INTRODUCTION ................................................................................................................. 1

4    ARGUMENT ....................................................................................................................... 1

5    I.    Questions Of Arbitrability Have Been Delegated To The Arbitrator ................................. 1

6          A.    California Law Does Not Govern The Question Whether
               Arbitrability Questions Have Been Delegated To The Arbitrator ........................ 1

7
8          B.    Incorporation Of AAA Rules Delegates Arbitrability Issues To The
               Arbitrator ................................................................................................................ 2

9    II.   Plaintiffs' Unconscionability Arguments Fail In Any Event ............................................. 6

10         A.    Plaintiffs Cannot Rely On Provisions Outside The Arbitration
               Agreement ............................................................................................................... 6

11
12         B.    Plaintiffs' Procedural Unconscionability Arguments Are
               Unfounded ............................................................................................................... 8

13         C.    The Arbitration Agreement Is Not Substantively Unconscionable....................... 10

14   III.  Plaintiffs Agreed To Arbitration In A Clickwrap Agreement .......................................... 13

15         CONCLUSION ................................................................................................................... 15

16

17

18

19

20

21

22

23

24

25

26

27

28

OHSUSA:758199929.1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*24 Hour Fitness, Inc. v. Super. Ct.*,
66 Cal. App. 4th 1199 (1998) ................................................................................ 8

*Abreu v. Slide, Inc.*,
2012 WL 2873772 (N.D. Cal. July 12, 2012) ....................................................... 7

*Adler v. Dell, Inc.*,
2008 WL 5351042 (E.D. Mich. Dec. 18, 2008) .................................................... 7

*Ajamian v. CantorCO2e, LP*,
203 Cal. App. 4th 771 (2012) ................................................................................ 3

*Allianz Global Risk U.S. Ins. Co. v. Gen. Elec. Co.*,
470 F. App'x 652 (9th Cir. 2012) .......................................................................... 7

*Am. Express Co. v. Italian Colors Rest.*,
133 S. Ct. 2304 (2013) ..................................................................................... 12, 13

*America Online, Inc. v. Super. Ct.*,
90 Cal. App. 4th 1 (2001) ...................................................................................... 12

*Armendariz v. Foundation Health Psychare Servs., Inc.*,
24 Cal. 4th 83 (2000) ............................................................................................. 6

*Arrequin v. Global Equity Lending, Inc.*,
2008 WL 4104340 (N.D. Cal. Sept. 2, 2008) ...................................................... 12

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) .......................................................................... 8, 10, 11, 12

*Awuah v. Coverall N. Am., Inc.*,
554 F.3d 7 (1st Cir. 2009) ...................................................................................... 4

*Bank of Am., N.A. v. Micheletti Family P'ship*,
2008 WL 4571245 (N.D. Cal. Oct. 14, 2008) ....................................................... 3

*U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*,
2013 WL 1332028 (E.D. Va. Mar. 29, 2013) ........................................................ 3

*Belton v. Comcast Cable Holdings*,
151 Cal. App. 4th 1224 (2007) ............................................................................... 8

*Bencharsky v. Cottman Transmission Sys., LLC*,
625 F. Supp. 2d 872 (N.D. Cal. 2008) ................................................................ 11

OHSUSA:758199929.1

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Bernal v. Sw. & Pac. Specialty Fin., Inc.,*
2014 WL 1868787 (N.D. Cal. May 7, 2014) ........................................................ 3

*Bigler v. Harker Sch.,*
213 Cal. App. 4th 727 (2013)........................................................................... 9, 11

*Bolter v. Super. Ct.,*
87 Cal. App. 4th 900 (2001)................................................................................ 12

*Brookdale Inn and Spa v. Certain Underwriters at Lloyds, London,*
2014 WL 116442 (N.D. Cal. Jan. 13, 2014) ........................................................ 9

*Buckeye Check Cashing v. Cardegna,*
546 U.S. 440 (2006) ........................................................................................ 4, 7

*Cape Flattery ltd. v. Titan Maritime, LLC,*
647 F.3d 914 (9th Cir. 2011).............................................................................. 2

*Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.,*
2012 WL 928412 (S.D. Cal. Mar. 19, 2012) .................................................... 12

*Casas v. Carmax Auto Superstores Cal. LLC,*
224 Cal. App. 4th 1233 (2014) ........................................................................... 7

*Chavez v. Bank of Am.,*
2011 WL 4712204 (N.D. Cal. Oct. 7, 2011)................................................. 12, 15

*Circuit City Stores, Inc., v. Adams,*
279 F.3d 889 (9th Cir. 2002)............................................................................... 7

*Circuit City Stores, Inc. v. Najd,*
294 F.3d 1104 (9th Cir. 2002)........................................................................... 15

*Clarium Capital Mgmt. LLC v. Choudhury,*
2009 WL 331588 (N.D. Cal. Feb. 11, 2009)....................................................... 3

*Coast Plaza Doctors Hosp. v. Blue Cross of Cal.,*
83 Cal. App. 4th 677 (2000)............................................................................. 11

*Collins v. Diamond Pet Food Processors of Cal., LLC,*
2013 WL 1791926 (E.D. Cal. Apr. 26, 2013) ................................................... 10

*Cox v. Ocean View Hotel Corp.,*
533 F.3d 1114 (9th Cir. 2008)........................................................................... 10

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Crook v. Wyndham Vacation Ownership, Inc.*,

4

2013 WL 6039399 (N.D. Cal. Nov. 8, 2013) ........................................................................... 3

*Damato v. Time Warner Cable, Inc.*,

5

2013 WL 3968765 (E.D.N.Y. July 31, 2013) ........................................................................... 7

6

*Davis v. Dell, Inc.*,

7

2007 WL 4623030 (D.N.J. Dec. 28, 2007) ............................................................................ 14

8

*Davis v. Global Client Solutions, LLC*,

9

2011 WL 4738547 (W.D. Ky. Oct. 7, 2011) ........................................................................... 7

10

*Day v. Microsoft Corp.*,

2014 WL 243159 (W.D. Wash. Jan. 22, 2014) ..................................................................... 14

11

*Dream Theater, Inc., v. Dream Theater*,

12

124 Cal. App. 4th 547 (2004) .................................................................................................. 3

13

*Ellsworth v. U.S. Bank, N.A.*,

14

2012 WL 4120003 (N.D. Cal. Sept. 19, 2012) ........................................................................ 3

15

*Gilroy v. Seabourn Cruise Line, Ltd.*,

2012 WL 1202343 (W.D. Wash. Apr. 10, 2012) ..................................................................... 7

16

*Goodwin v. H.M. Brown & Assocs., Inc.*,

17

2011 WL 820025 (D. Colo. Mar. 2, 2011) .............................................................................. 7

18

*Grabowski v. C.H. Robinson Co.*,

19

817 F. Supp. 2d 1159 (S.D. Cal. 2011) ............................................................................. 8, 11

20

*Guadagno v. E*Trade Bank*,

592 F. Supp. 2d 1263 (C.D. Cal. 2008) ............................................................................ 14, 15

21

*Guidewire Software, Inc. v. Chookaszian*,

22

2012 WL 5379589 (N.D. Cal. Oct. 31, 2012) (Koh, J.) ................................................. 1, 2, 3

23

*Hancock v. AT&T Co., Inc.*,

701 F.3d 1248 (10th Cir. 2012) ........................................................................................ 14, 15

24

*Hartung v. J.D. Byrider, Inc.*,

25

2008 WL 4615044 (E.D. Cal. Oct. 17, 2008) ....................................................................... 12

26

*Ingle v. Circuit City Stores, Inc.*,

27

328 F.3d 1165 (9th Cir. 2003) ................................................................................................ 7

28

OHSUSA:758199929.1

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Ireland v. Lear Capital, Inc.*,

4

2012 WL 6021551 (D. Minn. Dec. 4, 2012) ........................................................ 3

5

*In re Jamster Mktg. Litig.*,
2008 WL 4858506 (S.D. Cal. Nov. 10, 2008) .................................................... 12

6

*Kairy v. Supershuttle Int'l, Inc.*,

7

2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) .................................................... 7

8

*Khan v. Orkin Exterminating Co., Inc.*,
2011 WL 4853365 (N.D. Cal. Oct. 13, 2011) .................................................... 12

9

10

*Kimble v. Rhodes Coll., Inc.*,
2011 WL 2175249 (N.D. Cal. June 2, 2011) ...................................................... 3

11

*King v. Hausfeld*,

12

2013 WL 1435288 (N.D. Cal. Apr. 9, 2013) ..................................................... 12

13

*Laguna v. Coverall N. Am., Inc.*,
2011 WL 3176469 (S.D. Cal. July 26, 2011) ..................................................... 3

14

15

*Lane v. Francis Capital Mgmt. LLC*,
224 Cal. App. 4th 676 (2014) ...................................................................... 9, 10

16

*Lara v. Onsite Health, Inc.*,

17

896 F. Supp. 2d 831 (N.D. Cal. 2012) ........................................................... 7, 15

18

*Lucas v. Gund, Inc.*,
450 F. Supp. 2d 1125 (C.D. Cal. 2006) ............................................................ 15

19

20

*Madrigal v. New Cingular Wireless Servs., Inc.*,
2009 WL 2513478 (E.D. Cal. Aug. 17, 2009) ..................................................... 3

21

*Mance v. Mercedes-Benz USA*,

22

901 F. Supp. 2d 1147 (N.D. Cal. 2012) ............................................................. 8

23

*Miguel v. JPMorgan Chase Bank, N.A.*,
2013 WL 452418 (C.D. Cal. Feb. 5, 2013) ....................................................... 10

24

25

*Muriithi v. Shuttle Exp., Inc.*,
712 F.3d 173 (4th Cir. 2013) ......................................................................... 7

26

*In re Online Travel Co.*,

27

953 F. Supp. 2d 713 (N.D. Tex. 2013) ........................................................ 13, 14

28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Oracle America, Inc. v. Myriad Group, A.G.*,
724 F.3d 1069 (9th Cir. 2013) ............................................................................. 3, 4

*Peng v. First Republic Bank*,
219 Cal. App. 4th 1462 (2013) ........................................................................... 8, 10

*Philips v. Sprint PCS*,
209 Cal. App. 4th 758 (2012) ................................................................................... 7

*Polimaster Ltd. v. RAE Sys., Inc.*,
623 F.3d 832 (9th Cir. 2010) .................................................................................. 12

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010) ............................................................................................... 2, 7

*Robbins v. Kellan Restaurant Mgmt. Corp.*,
2013 WL 3937388 (E.D. Mo. July 30, 2013) ........................................................... 3

*Rodriguez v. American Techs., Inc.*,
136 Cal. App. 4th 1110 (2006) .................................................................................. 3

*Roldan v. Callahan & Blaine*,
219 Cal. App. 4th 87 (2013) ..................................................................................... 9

*Samaniego v. Empire Today LLC*,
205 Cal. App. 4th 1138 (2012) ................................................................................. 7

*Serpa v. Cal. Surety Investigations, Inc.*,
215 Cal. App. 4th 695 (2013) ................................................................................... 8

*Sheikh v. Cisco Sys., Inc.*,
2009 WL 890880 (N.D. Cal. Mar. 31, 2009) .......................................................... 11

*Sherman v. AT & T Inc.*,
2012 WL 1021823 (N.D. Ill. Mar. 26, 2012) ......................................................... 14

*SI V, LLC v. FMC Corp.*,
223 F. Supp. 1059 (N.D. Cal. 2002) ....................................................................... 13

*Siebert v. Amateur Athletic Union of U.S., Inc.*,
422 F. Supp. 2d 1033 (D. Minn. 2006) ................................................................... 14

*Smith v. Paul Green Sch. of Rock Music Franchising, LLC*,
2008 WL 2037721 (C.D. Cal. May 5, 2008) ........................................................... 12

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Specht v. Netscape Commc'ns Corp.*,
306 F.3d 17 (2d Cir. 2002) ..................................................................................... 15

4

5

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................................................... 14

6

*Tiri v. Lucky Chances, Inc.*,
171 Cal. Rptr. 3d 621 (2014) ................................................................................... 2

7

8

*Ulbrich v. Overstock.com, Inc.*,
887 F. Supp. 2d 924 (N.D. Cal. 2012) ................................................................... 10

9

10

*Valley Power Sys., Inc. v. Gen. Elec. Co.*,
2012 WL 665977 (C.D. Cal. Feb. 27, 2012) ............................................................ 3

11

*Visa USA, Inc. v. Martitz Inc.*,
2008 WL 744832 (N.D. Cal. Mar. 18, 2008) ............................................................ 3

12

13

*Wallace v. Red Bull Distrib. Co.*,
958 F. Supp. 2d 811 (N.D. Ohio 2013) ................................................................... 10

14

15

*Wayne v. Staples, Inc.*,
135 Cal. App. 4th 466 (2006) ................................................................................... 8

16

17

*Williams Constr. Co. v. Standard-Pacific Corp.*,
254 Cal. App. 2d 442 (1967) ................................................................................... 10

18

*Wilmot v. McNabb*,
269 F. Supp. 2d 1203 (N.D. Cal. 2003) ................................................................. 12

19

20

*Wynne v. Am. Express Co.*,
2010 WL 3860362 (E.D. Tex. Sept. 30, 2010) ........................................................ 7

21

*In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*,
893 F. Supp. 2d 1058 (D. Nev. 2012) ...................................................................... 7

22

23

**<u>Rules</u>**

24

Fedral Rules of Civil Procedure
Rule R-7(a) .............................................................................................................. 3

25

26

27

28

REPLY BRIEF IN SUPPORT OF DEFENDANT'S
OMNIBUS MOTION TO COMPEL ARBITRATION
(LEAD CASE NO. 5:13-cv-05682-LHK)

OHSUSA:758199929.1

# INTRODUCTION

Plaintiffs' Opposition to the Omnibus Motion to Compel Arbitration (the "Opposition" or "Opp.") is based primarily on procedural and substantive unconscionability arguments that must be decided by the arbitrator, not the courts.  The Opposition's attempts to deploy those arguments on the pivotal question of "who decides" questions of unconscionability and other arbitrability issues are fundamentally misconceived, and fly in the face of voluminous case law, including a decision of this Court that is directly on point.

The "who decides" question is a matter of federal arbitrability law, which requires that the arbitrator decide arbitrability issues when, as in this case, the arbitration agreement incorporates the rules of the American Arbitration Association ("AAA").  Plaintiffs nevertheless rely on state court cases that are both legally irrelevant and factually inapposite.  Although under the relevant legal analysis the Court need not address the substance of Plaintiffs' unconscionability arguments, those arguments are unfounded as well.

# ARGUMENT

## I.     Questions Of Arbitrability Have Been Delegated To The Arbitrator

### A.   California Law Does Not Govern The Question Whether Arbitrability Questions Have Been Delegated To The Arbitrator

Plaintiffs assert that the question of "who decides" arbitrability issues is governed by California law, and that California law requires a court -- not an arbitrator -- to determine arbitrability issues when the party resisting arbitration contends that the arbitration agreement is unconscionable.  Opp. at 6-8.  They are wrong on both counts.

Although substantive questions regarding the enforceability of arbitration agreements are generally decided under state law, the question of whether an arbitration agreement sufficiently delegates arbitrability questions to the arbitrator is a matter of federal arbitrability law.  A myriad of decisions (*see* footnote 1 below) from throughout the country, including cases in the Ninth Circuit, Northern District of California and this Court, have consistently ruled on the question of "who decides" questions of arbitrability without citing or relying on state law in any way, shape or form.  *See, e.g., Guidewire Software, Inc. v. Chookaszian*, 2012 WL 5379589 (N.D. Cal. Oct.

OHSUSA:758199929.1

31, 2012) (Koh, J.) (citing only federal cases).  That is true despite the fact that the contracts containing the arbitration agreements inevitably have provisions stating that they are governed by the law of a designated state.  Moreover, the Ninth Circuit has held that a general choice-of-law provision does not displace federal arbitrability law.  *Cape Flattery ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 920-22 (9th Cir. 2011).

Nor would California law preclude delegation of arbitrability questions to the arbitrator <u>if</u> it applied.  The Opposition relies on two employment cases that pre-date *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) -- *Murphy* and *Ontiveros* -- in stating that "California law holds the question of unconscionability cannot be delegated to an arbitrator" (at 6), and that under California law "an adhesive delegation clause giving the arbitrator power to decide unconscionability is <u>itself</u> unconscionable" (at 2; emphasis in original).  While that may have been the law in California before *Rent-A-Center* (at least in employment cases), the California decisions relied on in the Opposition <u>themselves</u> make clear that California courts now follow *Rent-A-Center* and other Supreme Court cases holding that arbitrability questions, including unconscionability defenses, can be delegated to the arbitrator.  *See, e.g.*, *Tiri v. Lucky Chances, Inc.*, 171 Cal. Rptr. 3d 621 (2014) ("*Ontiveros* and *Murphy* . . . have been undermined by more recent United States Supreme Court decisions in *Rent-A-Center* and [*Concepcion*].").

## B.  Incorporation Of AAA Rules Delegates Arbitrability Issues To The Arbitrator

Under well-settled federal arbitration law:  (1)  arbitrability issues such as unconscionability are to be decided by the arbitrator -- not the court -- when there is "clear and unmistakable evidence" that they have been delegated to the arbitrator; and (2) incorporation of the AAA rules provides such clear and unmistakable evidence.  At that point, the only question is a limited inquiry whether the "assertion of arbitrability is 'wholly groundless,'" *Guidewire*, 2012 WL 5379589, at *5, which is plainly not the case here.

As the Ninth Circuit has noted, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."

1  *Oracle America, Inc. v. Myriad Group, A.G.*, 724 F.3d 1069, `1074 (9th Cir. 2013) (emphasis

2  added).[1]  The district court decisions,[2] including this Court's decision in *Guidewire*, add many

3  more cases to the unbroken line of authority mandating the result Plaintiffs resist here.[3]

4       This case falls squarely within the uniform body of controlling case law requiring that the

5  arbitrator decide questions of arbitrability if the arbitration is to be conducted under AAA rules.

6  There is no dispute that the arbitration clause at issue provides for arbitration "under the rules and

7  auspices of the Arbitration Association," and that Rule R-7(a) of the AAA Commercial

8  Arbitration Rules[4] provides that the arbitrator has "the power to rule on his or her own

9  jurisdiction, including any objections with respect to the existence, scope, or validity of the

10 arbitration agreement."  Accordingly, there is clear and unmistakable evidence that

11 unconscionability and other arbitrability issues are to be decided by the arbitrator.[5]

12      Perhaps because there is no room for legitimate dispute on these core facts, the Opposition

13 (at 9-12) attempts to evade them by invoking state law cases and a provision of the TOS that is

---

[1] Although *Oracle* was not a consumer case, the vast majority of decisions it cited dealt with arbitration agreements between companies and consumers.  *Id.* at 1075.  The Court declined to express a view on consumer contracts.  *Id.*

[2] *See, e.g., Bernal v. Sw. & Pac. Specialty Fin., Inc.*, 2014 WL 1868787, at *4 (N.D. Cal. May 7, 2014); *Ellsworth v. U.S. Bank, N.A.*, 2012 WL 4120003, at *7-8 (N.D. Cal. Sept. 19, 2012); *Crook v. Wyndham Vacation Ownership, Inc.*, 2013 WL 6039399, at *6 (N.D. Cal. Nov. 8, 2013); *Kimble v. Rhodes Coll., Inc.*, 2011 WL 2175249, at *3 (N.D. Cal. June 2, 2011); *Clarium Capital Mgmt. LLC v. Choudhury*, 2009 WL 331588, at *5 (N.D. Cal. Feb. 11, 2009); *Bank of Am., N.A. v. Micheletti Family P'ship*, 2008 WL 4571245, at *6 (N.D. Cal. Oct. 14, 2008); *Visa USA, Inc. v. Martitz Inc.*, 2008 WL 744832, at *5 (N.D. Cal. Mar. 18, 2008); *Robbins v. Kellan Restaurant Mgmt. Corp.*, 2013 WL 3937388, at *2-3 (E.D. Mo. July 30, 2013); *Ireland v. Lear Capital, Inc.*, 2012 WL 6021551, at *3 (D. Minn. Dec. 4, 2012); ; *Laguna v. Coverall N. Am., Inc.*, 2011 WL 3176469, at *4 (S.D. Cal. July 26, 2011); *Valley Power Sys., Inc. v. Gen. Elec. Co.*, 2012 WL 665977, at *5 (C.D. Cal. Feb. 27, 2012); *Madrigal v. New Cingular Wireless Servs., Inc.*, 2009 WL 2513478, at *6 (E.D. Cal. Aug. 17, 2009); *U.S. ex rel. Beauchamp v. Academi Training Ctr., Inc.*, 2013 WL 1332028, at *5-6 (E.D. Va. Mar. 29, 2013).

[3] California cases have also reached the same conclusion.  *See, e.g., Rodriguez v. American Techs., Inc.*, 136 Cal. App. 4th 1110, 1123 (2006); *Dream Theater, Inc., v. Dream Theater,* 124 Cal. App. 4th 547, 550 (2004).

[4] Under the AAA rules, the AAA Commercial Rules would apply to Plaintiffs' claims, supplemented by the AAA's Supplementary Procedures for Consumer-Related Disputes.  *See* Talarides Decl., Ex. U at 8, Ex. T at 10.

[5] Although Plaintiffs repeatedly cite *Ajamian v. CantorCO2e, LP*, 203 Cal. App. 4th 771 (2012), that case is unavailing because, in addition to being a state court employment decision, it was decided on the basis of an arbitration agreement that permitted the employer to choose among the rules of the NASD, <u>or</u> the AAA, <u>or any other</u> alternative dispute resolution organization.  *Id.* at 787.  There was thus no incorporation of <u>any</u> arbitration rules.

3

OHSUSA:758199929.1

1  not part of the arbitration agreement.  Specifically, Plaintiffs argue that TOS section 28c, which

2  addresses the possibility that a "provision of the TOS is found by a court of competent

3  jurisdiction to be invalid," conflicts with the delegation of arbitrability issues to the arbitrator, and

4  that the purported conflict precludes a determination of clear and convincing evidence that

5  arbitrability questions have been delegated to the arbitrator.  That effort fails for several reasons.

6  First, <u>none</u> of the multitude of federal cases holding that incorporation of the AAA rules

7  constitutes the requisite clear and unmistakable evidence under federal arbitration law has ever

8  accepted an argument that a severability clause requires a different result.  The contracts into

9  which arbitration agreements are incorporated invariably contain the kind of boilerplate

10  "severability" clauses found in the TOS.  If the existence of such a provision defeated referral of

11  arbitrability issues to an arbitrator, the cases upholding such delegations would have been decided

12  differently, and the federal arbitrability law on this issue would be turned on its head.

13  Second, in the one discovered federal court case in which such an argument has <u>even been</u>

14  <u>made</u>, it was rejected.  The same argument Plaintiffs advance here -- based on the same AAA rule

15  and a severability clause like the one in the TOS -- was made in *Awuah v. Coverall N. Am., Inc.*,

16  554 F.3d 7 (1st Cir. 2009).  *Awuah* held that incorporation of the AAA rules constituted the

17  requisite clear and unmistakable evidence, and that the severability clause "is too thin a basis for

18  concluding the agreement's language evinces an intent to allow arbitrability to be decided by a

19  court."  *Id.* at 11.  The Ninth Circuit rejected the substance of Plaintiffs' argument in *Oracle*.

20  After ruling that incorporation of the UNCITRAL international arbitration rules authorizing the

21  arbitrator to decide arbitrability issues constituted clear and unmistakable evidence, the court held

22  that a separate provision of the UNCITRAL rules referring to a "pending challenge to [the arbitral

23  tribunal's] jurisdiction before a court" did not change the result.  743 F.3d at 1075.

24  Third, because the TOS severability clause is not part of the arbitration agreement,

25  Plaintiffs' argument contravenes the FAA and federal arbitration law, which require that the

26  arbitration agreement be analyzed without reference to other provisions of a contract in which it is

27  incorporated.  *See, e.g., Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 446 (2006) ("As a

28  matter of substantive federal arbitration law, an arbitration provision is severable from the

4

OHSUSA:758199929.1

1    remainder of the contract.")  *See* pages 6-7 below; Opening Br. at 10.

2           Fourth, the state cases cited in the Opposition for the proposition that the severability

3    clause in the TOS prevents an arbitrator from deciding arbitrability are inapplicable on their facts.

4    As noted at pages 1-2 above, the question whether the arbitration agreement delegates

5    arbitrability issues to the arbitrator is one of substantive federal arbitrability law, and Plaintiffs'

6    reliance on state cases is therefore misplaced -- particularly to the extent the cases might conflict

7    with federal case law on the issue.  Even if the state cases in the Opposition were controlling,

8    however, they would lend no support to Plaintiffs' position because the facts and rationale on

9    which they are based are conspicuously absent here.

10          Each of the state cases on which Plaintiffs rely -- *Baker v. Osborne Dev. Corp.*, *Parada v.*

11   *Super. Ct.*, *Hartley v. Super. Ct.* and *Peleg v. Neiman Marcus Grp.* -- stretched a long way to find

12   a conflict between delegation of arbitrability issues to the arbitrator, and a severability clause

13   suggesting that a court could decide such questions.  There is no similar conflict, tension or

14   inconsistency here, because the arbitration agreement is fundamentally different from the

15   agreements in those cases.

16          The state cases cited in the Opposition were decided on the basis of arbitration agreements

17   that required arbitration of <u>all disputes</u> that might arise under the contract, leaving no room for a

18   court to decide any such issue, including issues related to arbitrability.  *See Baker*, 159 Cal. App.

19   4th at 888 ("Any and all claims, disputes and controversies"); *Peleg*, 204 Cal. App. 4th at 1435

20   ("All Claims" on an exhaustive list); *Hartley*, 196 Cal. App. 4th at 1256 ("any and all disputes,

21   claims or controversies"); *Parada*, 176 Cal. App. 4th at 1561 ("any and all disputes, claims or

22   controversies").  In sharp contrast, the arbitration agreement at issue here specifies a broad swath

23   of disputes that would <u>not</u> be decided by the arbitrator, and could <u>only</u> be decided by a court.

24          Rather than requiring arbitration of any and all disputes, claims and controversies, the

25   23andMe arbitration agreement begins by exempting "any disputes relating to intellectual

26   property rights, obligations, or any infringement claims."  Moreover, the disputes that would be

27   litigated in court -- not arbitrated -- under the 23andMe arbitration agreement are substantial,

28   broad and diverse, because the TOS addresses a wide variety of "intellectual property rights and

REPLY BRIEF IN SUPPORT OF DEFENDANT'S
OMNIBUS MOTION TO COMPEL ARBITRATION (LEAD
CASE NO. 5:13-cv-05682-LHK)

1   obligations," in considerable detail.[6]  If in adjudicating the rights and obligations carved out of the

2   arbitration agreement a court held a provision of the TOS invalid, there would be no impact

3   whatsoever on the arbitration agreement.  Accordingly, there is no conflict, no basis for any

4   argument that what the federal cases hold is clear and unmistakable evidence is somehow

5   transformed into an ambiguity.

6   **II.     Plaintiffs' Unconscionability Arguments Fail In Any Event**

7           The fact that Plaintiffs' unconscionability arguments must be determined by the arbitrator

8   requires that 23andMe's motion be granted without delving into their merits, but it is clear that

9   the arguments lack merit.[7]

10          **A.   Plaintiffs Cannot Rely On Provisions Outside The Arbitration Agreement**

11          Plaintiffs' unconscionability arguments are based in large part on challenges to provisions

12  of the TOS that are not part of the arbitration agreement.  The Opposition claims that the

13  arbitration agreement is unconscionable or illusory because section 28(h) gives 23andMe the

14  unilateral right to amend the TOS without advance notice, section 28(d) imposes a 1-year statute

15  of limitations, section 25 disclaims any warranties, and section 26 waives, among other things,

16  consequential and punitive damages.  *See* Opp. at 20, 22-23.

17          The fact that these TOS provisions are not part of the arbitration provision (*see* Talarides

18  Decl., Ex. J) forecloses efforts to use them as a platform for attacking the agreement, because "as

---

19
20  [6] For example, Section 9 of the TOS grants a limited license, and addresses copyright and other
    intellectual property rights. Portions of Section 10 deal with proprietary information, and
21  infringement of patent, trademark, trade secret, copyright and other proprietary rights.  Section 13
    spells out the proprietary rights of customers, and discusses licenses and copyright issues.
    Section 15 refers to the license granted in Section 9 and restrictions on customers' ability to sell,
22  license or use the Services for commercial purposes.  Section 22, articulates the Company's
    proprietary rights, including intellectual property and patent rights, and refers to protection under
23  copyrights, trademarks, service marks and patents.  *See* Talarides Decl., Ex. J.

    [7] It's telling that the <u>vast</u> majority of the cases relied on by the Opposition are employment cases.
24  Arbitration agreements arising out of the employer-employee relationship are given extra scrutiny
    by California courts because "in the case of preemployment arbitration contracts, the economic
25  pressure exerted by employers on all but the most sought-after employees may be particularly
    acute, for the arbitration agreement stands between the employee and necessary employment, and
26  few employees are in a position to refuse a job because of an arbitration requirement."
    *Armendariz v. Foundation Health Psychare Servs., Inc.*, 24 Cal. 4th 83, 115 (2000).  Indeed, in
27  adopting various rules for the enforceability of employment arbitration agreements, the California
    Supreme Court emphasized that it was doing so "in the particular context of mandatory
28  employment arbitration agreements."  *Id.* at 103 n.8.

---

REPLY BRIEF IN SUPPORT OF DEFENDANT'S
OMNIBUS MOTION TO COMPEL ARBITRATION (LEAD
CASE NO. 5:13-cv-05682-LHK)

a matter of substantive federal arbitration law, an arbitration agreement is severable from the remainder of the contract." *Buckeye*, 546 U.S. at 445.  A party challenging the enforceability of an arbitration provision must rely on grounds that relate specifically to the arbitration provision, <u>without</u> reference to the larger contract. *Rent-A-Center*, 561 U.S. at 70-72; *Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 843 (N.D. Cal. 2012).

Following *Rent-A-Center* and *Buckeye*, numerous federal courts have rejected unconscionability challenges that rely on the existence of unilateral modification, statute of limitations and limitation of liability provisions elsewhere in the larger contract.[8]  California courts have done the same. *See, e.g.*, *Philips v. Sprint PCS*, 209 Cal. App. 4th 758, 773-74 (2012).  The cases cited in the Opposition as being to the contrary are inapposite.[9]

The Opposition's reliance on *In re Zappos.com, Inc. Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058 (D. Nev. 2012), which held that a unilateral modification provision in a contract renders a separate arbitration agreement illusory, is similarly unavailing.  As one court noted, *Zappos* "contains no mention of the Supreme Court's decisions in *Prima–Paint*, *Buckeye*, or *Rent–A–Center*," and "thus did not consider any of the controlling precedent on the question of who should adjudicate the illusoriness of the contract." *Damato*, 2013 WL 3968765, at *5.[10]

---

[8] *See, e.g.*, *Allianz Global Risk U.S. Ins. Co. v. Gen. Elec. Co.*, 470 F. App'x 652, 654 (9th Cir. 2012); *Abreu v. Slide, Inc.*, 2012 WL 2873772, at *4 (N.D. Cal. July 12, 2012); *Kairy v. Supershuttle Int'l, Inc.*, 2012 WL 4343220, at *9 (N.D. Cal. Sept. 20, 2012); *Damato v. Time Warner Cable, Inc.*, 2013 WL 3968765, at *5-8 (E.D.N.Y. July 31, 2013); *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 184 (4th Cir. 2013); *Adler v. Dell, Inc.*, 2008 WL 5351042, at *12 (E.D. Mich. Dec. 18, 2008); *Wynne v. Am. Express Co.*, 2010 WL 3860362, at *6 (E.D. Tex. Sept. 30, 2010); *Gilroy v. Seabourn Cruise Line, Ltd.*, 2012 WL 1202343, at *5 (W.D. Wash. Apr. 10, 2012); *Goodwin v. H.M. Brown & Assocs., Inc.*, 2011 WL 820025, at *4 (D. Colo. Mar. 2, 2011); *Davis v. Global Client Solutions, LLC*, 2011 WL 4738547, at *2 (W.D. Ky. Oct. 7, 2011).

[9] Three of the cases pre-date *Buckeye* and *Rent-A-Center*, and the provisions at issue were <u>part</u> of a standalone arbitration agreement, rather than distinct provisions of a larger contract.  *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1175, 1179 (9th Cir. 2003); *Circuit City Stores, Inc., v. Adams*, 279 F.3d 889, 891, 894 (9th Cir. 2002); *Amendariz*, 24 Cal. 4th at 9-92.  A fourth case, *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138 (2012), is directly contrary to *Buckeye* and *Rent-A-Center*, and does not support Plaintiffs' position in any event, since the statue of limitations in that case was shortened to 6 months (versus 1 year) and the case involved an employment contract.  Indeed, *Samaniego* itself emphasized that "a contractual provision that unilaterally shortens a limitations period to six months, taken alone, does not necessarily render an adhesion contract substantively unconscionable," and that "[t]he import of such a clause is quite different in the context of [] statutory wage and hour claims." *Id.*

[10] Moreover, *Zappos* was decided under Nevada law, which is contrary to California law on this point. *See, e.g.*, *Casas v. Carmax Auto Superstores Cal. LLC*, 224 Cal. App. 4th 1233, 1237

REPLY BRIEF IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION TO COMPEL ARBITRATION (LEAD CASE NO. 5:13-cv-05682-LHK)

1

**B.   Plaintiffs' Procedural Unconscionability Arguments Are Unfounded**

2

As 23andMe demonstrated in its Opening Brief (at 10), procedural unconscionability

3

requires "oppression" or "surprise."  The 23andMe arbitration agreement here lacks both

4

elements.

5

Plaintiffs' attack on the "take-it-or-leave-it" nature of the TOS (Opp. at 19) fails because it

6

equates a contract of adhesion with unconscionability.  That is not the law.  *See* Opening Br. at

7

10-11.  "[T]he times in which consumer contracts were anything other than adhesive are long

8

past."  *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750 (2011); *Mance v. Mercedes-*

9

*Benz USA*, 901 F. Supp. 2d 1147, 1161 (N.D. Cal. 2012) ("The clear import of *Concepcion* . . .

10

pushes against finding that an adhesive contract, without more, is *per se* procedurally

11

unconscionable."); *Grabowski v. C.H. Robinson Co.*, 817 F. Supp. 2d 1159, 1172 (S.D. Cal.

12

2011) ("In light of . . . *Concepcion*, . . . the Court does not find that the adhesive nature of the

13

agreement weighs strongly in favor of procedural unconscionability").

14

Moreover, because Plaintiffs had meaningful market alternatives to 23andMe's Service,[11]

15

"[t]here can be no oppression establishing procedural unconscionability, even assuming unequal

16

bargaining power and an adhesion contract, when the customer has meaningful choices."  *Wayne*

17

*v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006); *Belton v. Comcast Cable Holdings*, 151 Cal.

18

App. 4th 1224, 1245 (2007) ("availability of alternative sources from which to obtain the desired

19

service defeats any claim of oppression, because the consumer has a meaningful choice").

20

The Opposition's assertion (at 19) that the arbitration agreement is "not set up in a way

21

that draws in the reader's attention" because it is located at the end of the TOS under the heading

22

"Miscellaneous" is legally irrelevant.  Plaintiffs clicked a button stating that they had read the

23

(2014) ("Under California law . . . even a modification clause not providing for advance notice

24

does not render an agreement illusory, because the agreement also contains an implied covenant
of good faith and fair dealing. . . .  '[T]he implied covenant of good faith and fair dealing limits
the employer's authority to unilaterally modify the arbitration agreement and saves that

25

agreement from being illusory and thus unconscionable.'"); *Peng v. First Republic Bank* , 219
Cal. App. 4th 1462, 1473-74 (2013); *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th

26

695, 707-08 (2013); *24 Hour Fitness, Inc. v. Super. Ct.*, 66 Cal. App. 4th 1199, 1213-14 (1998).

27

[11] *See, e.g.*, Ancestry.com (www.ancestry.com), Family Tree DNA (www.familytreedna.com),
Counsyl (www.counsyl.com), Invitae (www.invitae.com), Ambry Genetics (www.ambrygen.com),

28

Pathway Genomics (www.pathway.com), Personalis (www.personalis.com), PatientsLikeMe
(www.patientslikeme.com).

8

1   TOS and agreed to them.  *See* Opening Br. at 3.  That is all that is required.  As the cases cited in

2   the Opposition recognize, "one who signs an instrument may not avoid the impact of its terms on

3   the ground that he failed to read the instrument before signing it."  *Roldan v. Callahan & Blaine*,

4   219 Cal. App. 4th 87, 93 (2013).[12]

5          In any event, the arbitration agreement was not hidden or difficult to understand.  *See*

6   Talarides Decl., Ex. J (§ 28(b)).  It is clearly labeled in boldface "**Applicable law and**

7   **arbitration**," is written in the same reasonably sized text as the rest of the TOS and in plain

8   language, and is no less prominent than the other provisions appearing in the "Miscellaneous"

9   section of the TOS.  *See, e.g.*, *Brookdale Inn and Spa v. Certain Underwriters at Lloyds, London*,

10  2014 WL 116442, at *4 (N.D. Cal. Jan. 13, 2014) (arbitration clause appearing "on page 12 of 34

11  and is printed in the same font as most of the rest of the text," is "clause number 12 in a list of

12  other contract provisions," "uses the same formatting scheme" as do the other "provisions

13  appearing in this list," and "is no more or less prominent" than the other "terms appearing in the

14  list," was "neither surprising nor hidden").

15         Nor does the failure to provide Plaintiffs a copy of the AAA rules render an arbitration

16  agreement procedurally unconscionable.  Arbitration agreements rarely attach copies of the

17  underlying rules, which are readily available.  "There could be no surprise, as the arbitration rules

18  referenced in the agreement were easily accessible to the parties – the AAA rules are available on

19  the Internet."  *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 691 (2014) (declining

20  to follow *Harper*, *Trivedi* and *Sparks*, cited in the Opp. at 20).  *See also Bigler v. Harker Sch.*,

21  213 Cal. App. 4th 727, 737 (2013) (the "failure to provide a copy of the AAA rules . . . is of

22  minor significance to our analysis").  Moreover, Plaintiffs do not "identify any feature of the

23  AAA rules that prevent fair and full arbitration," and thus "the failure to attach the AAA rules,

24  standing alone, is insufficient grounds to support a finding of procedural unconscionability."

25

26  _____
    [12] Contrary to the impression conveyed in the Opposition, *Roldan* did not refuse to enforce an
    arbitration agreement because the plaintiffs did not actually read or understand the agreement.  To
27  the contrary, the court had previously declined to review the trial court's orders compelling
    arbitration, and assumed on appeal that the "earlier orders compelling arbitration were correct."
28  *Roldan*, 219 Cal. App. 4th at 95.

REPLY BRIEF IN SUPPORT OF DEFENDANT'S
OMNIBUS MOTION TO COMPEL ARBITRATION (LEAD
CASE NO. 5:13-cv-05682-LHK)

1   *Peng*, 219 Cal. App. 4th at 1472 (distinguishing *Harper* and *Trivedi*); *See also Miguel v.*

2   *JPMorgan Chase Bank, N.A.*, 2013 WL 452418, at *5 (C.D. Cal. Feb. 5, 2013).

3          More fundamentally, an unconscionability defense based on the failure to provide a copy

4   of the AAA rules is barred by the FAA and *Concepcion*, because it asks the Court to treat the

5   arbitration agreement differently from nonarbitration agreements. *See* Opening Br. at 9.[13]   As

6   Judge Rogers recently held in rejecting the argument Plaintiffs make here, *i.e.*, that an arbitration

7   agreement is procedurally unconscionable unless a consumer is given a copy of the AAA rules:

8          Ulbrich essentially argues that arbitration agreements should be treated differently
           from other contracts with respect to incorporation by reference. This is an
9          argument the Court cannot accept given the Supreme Court's clear direction that a
           "state statute or judicial rule that applies only to arbitration agreements, and not to
10         contracts generally, is preempted by the FAA."

11  *Ulbrich v. Overstock.com, Inc.*, 887 F. Supp. 2d 924, 933 (N.D. Cal. 2012); *accord Wallace v.*

12  *Red Bull Distrib. Co.*, 958 F. Supp. 2d 811, 823-23 (N.D. Ohio 2013); *Collins v. Diamond Pet*

13  *Food Processors of Cal., LLC*, 2013 WL 1791926, at *5 (E.D. Cal. Apr. 26, 2013).

14         **C.   The Arbitration Agreement Is Not Substantively Unconscionable**

15         As 23andMe explained in its Opening Brief, the presence of "unreasonable" terms is not

16  enough to demonstrate substantive unconscionability; rather, the terms must be so "overly harsh

17  or so one-sided that it shocks the conscience." Opening Br. at 11. The Opposition does not --

18  and cannot -- make such a showing.

19         The AAA rules incorporated into the arbitration agreement have been universally

20  recognized as "neutral and fair," and the agreement enables 23andMe customers throughout the

21  country to avail themselves of what the courts have accurately described as California's

22  "extremely consumer-friendly statutes." *See* Opening Br. at 11.   Moreover, the "loser pays"

23

---

24  [13] Under general California rules of contract, matters can be validly incorporated into a contract
    by reference and need not accompany the contract where the incorporation is clear and the
25  incorporated matters are readily available. *Williams Constr. Co. v. Standard-Pacific Corp.*, 254
    Cal. App. 2d 442, 454 (1967). Both conditions are true here. *See Cox v. Ocean View Hotel*
26  *Corp.*, 533 F.3d 1114, 1122 (9th Cir. 2008); *Lane*, 224 Cal. App. 4th at 691. To find that the
    arbitration agreement is procedurally unconscionable because 23andMe did not provide Plaintiffs
27  with a copy of the AAA rules would be contrary to general California contract law, and thus
    create a defense "that appl[ies] only to arbitration or that derive[s] [its] meaning from the fact that
28  an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (quotations omitted).

OHSUSA:758199929.1

1    clause in the arbitration agreement has no impact on this case because 23andMe has <u>formally</u>

2    <u>waived</u> any right to recover attorney fees or costs as a prevailing party pursuant to the AAA's

3    policy and request.  In any event, such clauses are <u>easily</u> severed from the remainder of an

4    arbitration agreement.  *Bigler v. Harker Sch.*, 213 Cal. App. 4th 727, 738 (2013) ("As for the

5    provision for attorney fees to the prevailing party, that term could easily have been severed").

6          Plaintiffs' other unconscionability arguments are unfounded because they rely on

7    inapposite employment cases, are refuted by the AAA rules regarding discovery,[14] are bereft of

8    legal or factual support,[15] and otherwise fail in the face of the strong federal policy favoring

9    arbitration and that policy's corresponding rule that any offending clauses should be severed and

10   the agreement to arbitrate be enforced.  *See* Opening Br. at 5, 9-10.

11         Plaintiffs' attempt to convert the language "any dispute with 23andMe" into a one-way

12   provision that permits only 23andMe to assert intellectual property claims in court is similarly off

13   base.  The language imposes no such limitation, and the TOS confer substantial IP rights <u>on</u>

14   customers, which they are free to assert in court.  *See, e.g.,* Talarides Decl., Ex J (§ 13 ("Material

15   Provided to 23andMe - Your Proprietary Rights")).  Even if the IP carve out favored 23andMe

16   and were unconscionable, it would be easily severable.[16]

---

[14] "The fact that an arbitration may limit a party's discovery rights is not 'substantive unconscionability.'" *Coast Plaza Doctors Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 690 (2000).  Indeed, the FAA prohibits courts from finding an arbitration agreement unconscionable based on the fact that it "fail[s] to provide for judicially monitored discovery." *Concepcion*, 131 S. Ct. at 1747.  AAA rules command the arbitrator to manage discovery in a manner that "safeguard[s] each party's opportunity to fairly present its claims and defenses," and authorizes the arbitrator to order the production of documents "reasonably believed by the party seeking documents to exist and to be relevant and material to the outcome of disputed issues."  Talarides Decl., Ex. T at p. 19.  *See, e.g.*, *Coast Plaza*, 83 Cal. App. 4th at 689-90 (rejecting argument that the mere fact that opportunities for discovery are limited under the AAA commercial rules renders an arbitration agreement unconscionable).

[15] There is no authority for the notion that, by requiring arbitration to be held in English, the arbitration agreement is substantively unconscionable.  Moreover, *none* of the Plaintiffs claim that they do not speak or understand English.  Equally baseless is the argument that the arbitration agreement is unconscionable because Plaintiffs would have to "become familiar with complex arbitration rules or hire an attorney."  The AAA rules are certainly no more complex than the Federal Rules of Civil Procedure.  *See* Talarides Decl., Exs. T & U.  Having all hired lawyers, Plaintiffs cannot argue that being able to litigate in court would obviate the need for a lawyer.

[16] *See, e.g.*, *Grabowksi*, 817 F. Supp. 2d at 1159 (severing IP carve out and two other provisions and enforcing remainder of arbitration agreement); *Bencharsky v. Cottman Transmission Sys., LLC*, 625 F. Supp. 2d 872, 883 (N.D. Cal. 2008) (same); *Sheikh v. Cisco Sys., Inc.*, 2009 WL 890880, at *6 (N.D. Cal. Mar. 31, 2009) (same).

REPLY BRIEF IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION TO COMPEL ARBITRATION (LEAD CASE NO. 5:13-cv-05682-LHK)

OHSUSA:758199929.1

1    Plaintiffs' attempt to cast the AAA filing fee -- $200, not $975 as stated in the

2    Opposition[17] -- and other arbitration expenses as substantively unconscionable fails because the

3    courts have repeatedly held that the AAA's Supplementary Procedures for Consumer-Related

4    Disputes are fair.  *Khan v. Orkin Exterminating Co., Inc.*, 2011 WL 4853365, at * 1, 3 (N.D. Cal.

5    Oct. 13, 2011); *In re Jamster Mktg. Litig.*, 2008 WL 4858506, at *1, *6 (S.D. Cal. Nov. 10,

6    2008).  Those procedures provide (among other things) that "[a]ll expenses of the arbitrator,

7    including required travel and other expenses, and any AAA expenses, as well as costs related to

8    proof and witnesses produced at the direction of the arbitrator, shall be borne by the business."

9    Talarides Decl., Ex. U at p. 14.[18]

10    Similarly, the Supreme Court has soundly rejected the argument that a plaintiff's rights

11    cannot be vindicated because their claims are worth much less than the cost of arbitrating them.

12    *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310-12 (2013).  In *Italian Colors*, the

13    plaintiffs argued that the arbitration agreement was unenforceable because plaintiffs' cost of

14    arbitrating exceeded the potential recovery.  The Court gave this argument short shrift, ruling that

---

[17] *Compare* Opp. at 21, *with* Talarides Decl., Ex. U at p. 12.

[18] As for the designation of San Francisco as the location of the arbitration, "it is effectively a forum selection clause, in which the parties agreed to arbitrate at the location of [23andMe's] principal place of business. This choice of forum is presumptively enforceable," *Polimaster Ltd. v. RAE Sys., Inc.*, 623 F.3d 832, 837 (9th Cir. 2010), and "the additional cost or inconvenience necessitated by litigation in the selected forum is not part of the calculus when considering whether a forum selection clause should be enforced," *America Online, Inc. v. Super. Ct.*, 90 Cal. App. 4th 1, 19 (2001).  Thus, Plaintiffs' argument that the clause is unconscionable based on the additional cost of litigating in San Francisco is preempted by the FAA and *Concepcion*, since they are arguing that arbitration agreements should be treated differently from other contracts with respect to forum selection clauses.  *See* page 10 above; Opening Br. at 9; *Smith v. Paul Green Sch. of Rock Music Franchising, LLC*, 2008 WL 2037721, at *6 (C.D. Cal. May 5, 2008) ("The added expense and inconvenience of litigating in Pennsylvania, however, is not enough to invalidate the forum selection provision in the arbitration clause here." (citation omitted)). Moreover, the forum selection clause here "is of the sort often found in arbitration agreements and other contracts. Given the location of the firm's headquarters, there is a rational basis for selecting a [San Francisco] forum, and Plaintiff[s] ha[ve] failed to establish that the operation of this clause is so 'overly harsh or one-sided' as to be unconscionable."  *King v. Hausfeld*, 2013 WL 1435288, at *15 (N.D. Cal. Apr. 9, 2013).  *See, e.g.*, *Captain Bounce, Inc. v. Bus. Fin. Servs., Inc.*, 2012 WL 928412 (S.D. Cal. Mar. 19, 2012).  In any event, the clause could easily be severed.  *See, e.g.*, *Bolter v. Super. Ct.*, 87 Cal. App. 4th 900, 911 (2001) (holding that venue clause is "clearly severable from the remainder of the arbitration agreement"); *Chavez v. Bank of Am.*, 2011 WL 4712204, at *11 (N.D. Cal. Oct. 7, 2011) (same); *Wilmot v. McNabb*, 269 F. Supp. 2d 1203, 1212 (N.D. Cal. 2003) (same); *Hartung v. J.D. Byrider, Inc.*, 2008 WL 4615044 (E.D. Cal. Oct. 17, 2008) (same); *Arrequin v. Global Equity Lending, Inc.*, 2008 WL 4104340 (N.D. Cal. Sept. 2, 2008) (same).

---

REPLY BRIEF IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION TO COMPEL ARBITRATION (LEAD CASE NO. 5:13-cv-05682-LHK)

OHSUSA:758199929.1

1  the inconvenience of tallying the costs and burdens would "destroy that prospect of speedy

2  resolution that arbitration . . . was meant to secure." *Id.* at 2311-12.

3  　　　　The bottom line is that, in addition to having been delegated to the arbitrator, Plaintiffs'

4  substantive unconscionability arguments are unsustainable.  Even if that were not the case, any

5  clause found to have been unconscionable or unenforceable could easily be severed, which would

6  be the preferred course in light of the powerful policies favoring arbitration and enforcement of

7  arbitration agreements.  *See, e.g.*, *SI V, LLC v. FMC Corp.*, 223 F. Supp. 1059, 1063 (N.D. Cal.

8  2002) ("Since public policy dictates a strong preference for enforcement of arbitration

9  agreements, many California courts have ruled in favor of severing unenforceable provisions

10  from these agreements." (citations omitted)).

11  **III.    Plaintiffs Agreed To Arbitration In A Clickwrap Agreement**

12  　　　　There is no basis for any contention that Plaintiffs did not accept the TOS, including the

13  arbitration agreement.  Each Plaintiff concedes that he or she received genetic information, which

14  they could not have done without "creat[ing] an account and register[ing] his or her DNA

15  collection kit on the 23andMe website," Hillyer Decl. ¶ 3, a process that necessarily required each

16  of them to affirmatively accept the TOS on <u>two separate occasions</u>.  *Id.* ¶¶ 2-3, 7.[19]  The fact that

17  it is "impossible" to create an account, register for the Service or receive genetic information

18  without accepting the TOS disposes of any argument on this point -- both as a matter of common

19  sense, and under the law.  *See, e.g.*, *In re Online Travel Co.*, 953 F. Supp. 2d 713, 719 (N.D. Tex.

20  2013) (compelling arbitration where "it was impossible to complete a transaction on the

21

22

---

23  [19] When opening their 23andMe accounts, Plaintiffs (along with all other customers) affirmatively
24  indicated their assent to the TOS by clicking on a button located immediately next to a statement
   that read: "Yes, I have read and agree to the **Terms of Service** and **Privacy Statement**."  Hillyer
   Decl. ¶ 4 & Ex. 1.  Next, when registering their DNA collection kits, Plaintiffs (along with all
25  other customers) were advised: "When you sign up for 23andMe's service you agree to our Terms
   of Service.  Click **here** to read our full Terms of Service."  *Id.* ¶ 5 & Ex. 2.  Plaintiffs then
26  reconfirmed their agreement to the TOS, which stated that the TOS was the legal contract
   between Plaintiff and 23andMe, by clicking on a conspicuous "**I ACCEPT THE TERMS OF**
27  **SERVICE**" button.  *Id.* The TOS further explained:  "In order to use the Services, you must first
   agree to the TOS.  You may not use the Services if you do not accept the TOS."  Talarides Decl.,
28  Ex. J (§ 2).

13

1   Travelocity website in the absence of affirmative assent to the User Agreement").[20]

2   Electronic agreements like the TOS -- so-called "clickwrap" agreements that require

3   consumers to expressly manifest assent to their terms by clicking an "accept" button in order to

4   proceed with a transaction -- are "common and 'have routinely been upheld.'" *Hancock v. AT&T*

5   *Co., Inc.*, 701 F.3d 1248, 1256 (10th Cir. 2012).  When arbitration agreements are included in the

6   clickwrap agreement, the courts have uniformly compelled arbitration.[21]  In addition to being

7   committed to the arbitrator for decision, the arguments Plaintiffs make to circumvent these core

8   facts fail on multiple grounds.

9   First, Plaintiffs' claim that "there was no consideration given for being forced to accept

10   the" TOS because in some instances money was paid before acceptance of the TOS (Opp. at 17),

11   is wrong as a matter of law and unsupported by the facts.  Under California law, 23andMe's

12
13   [20] Plaintiffs argue that 23andMe has not provided "competent evidence that plaintiffs agreed to
the Terms of Service" (Opp. at 16), but indeed:  because all 23andMe customers are <u>required</u> to
14   agree to the TOS in order to receive the Service, the burden shifts to Plaintiffs to provide a
"declaration or other evidence that [they] did <u>not</u> see or agree to the TOS."  *Swift v. Zynga Game*
15   *Network, Inc.*, 805 F. Supp. 2d 904, 911 (N.D. Cal. 2011) (emphasis added).  *See also In re*
*Online Travel*, 953 F. Supp. 2d at 718-19 (where Travelocity established that all users were
16   required to "assent to Travelocity's Use Agreement" and plaintiffs "produced no evidence to the
contrary," the court held that Travelocity had "provided sufficient evidence that Plaintiffs
17   manifested assent to the User Agreement . . . even though Travelocity [did] not
provid[e]transaction-specific evidence as to each plaintiff").  In any event, included with this
18   reply is Kent Hillyer's Supplemental Declaration, which forecloses even the slightest doubt that
Plaintiffs agreed to the TOS.  *See* Hillyer Suppl. Decl. ¶ 2 & Exs. A-M.

19   [21] *See, e.g.*, *Swift*, 805 F. Supp. 2d at 908 (compelling arbitration because "clickwrap
presentations providing a user with access to the terms of service and requiring a user to
20   affirmatively accept the terms, even if the terms are not presented on the same page as the
acceptance button, are sufficient" to form a binding contract); *Day v. Microsoft Corp.*, 2014 WL
21   243159, at *2 (W.D. Wash. Jan. 22, 2014) (compelling arbitration where "Plaintiff had to accept
the terms of the Windows 8 Pro agreement by checking an 'I accept the license terms' box and
22   then by clicking on an 'Accept' button before accessing the product"); *In re Online Travel Co.*,
953 F. Supp. 2d at 719 ("[s]ince the User Agreement was conspicuously presented and Plaintiffs
23   assented to the User Agreement by clicking the "Accept" button to complete each online
transaction, it is a valid clickwrap agreement"); *Sherman v. AT & T Inc.*, 2012 WL 1021823, at *3
24   (N.D. Ill. Mar. 26, 2012) (compelling arbitration where plaintiff "actively clicked that he accepted
the hyperlinked Terms" and "would have been unable to proceed with the activation process and
25   would never have received his internet service without clicking his assent"); *Guadagno v.*
*E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) (compelling arbitration where "a
26   highlighted, underlined link to the Agreement was directly above the acknowledgement box" that
plaintiff had to click to open an account); *Davis v. Dell, Inc.*, 2007 WL 4623030, at *5 (D.N.J.
Dec. 28, 2007) (compelling arbitration because "the clicking of the accept box constituted a
27   manifest assent by Plaintiff to Dell's Terms and Conditions"); *Siebert v. Amateur Athletic Union*
*of U.S., Inc.*, 422 F. Supp. 2d 1033, 1039-40 (D. Minn. 2006) (compelling arbitration because
28   "the 'click' represents assent to the contract, including the arbitration clause").

14

OHSUSA:758199929.1

"promise to submit to arbitration and to forego the option of a judicial forum for a specified class of claims constitutes sufficient consideration."  *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002).  *See, e.g.*, *Lara*, 896 F. Supp. 2d at 838; *Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1130 n.5 (C.D. Cal. 2006) ("Lucas also argues that the agreement is unenforceable because Gund provided no consideration for the agreement, however, the fact that Gund is also bound by the agreement is adequate consideration").   Moreover, the Opposition's attempt to slice and dice an integrated transaction into little pieces ignores both the transaction realities (Opening Br. at 3-4), and the fact that the TOS themselves involved exchanges of consideration, including with respect to intellectual property rights.  Talarides Decl., Ex. J (§§ 9, 13, 23).

Second, Plaintiffs are wrong that the TOS constitute a "browsewrap" agreement because 23andMe customers could use the Service "without visiting the page hosting the browsewrap agreement or even knowing the webpage exists."  Opp. at 15 (citing *Be In, Inc. v. Google Inc.*, 2013 WL 5568706, at *22-23 (N.D. Cal. Oct. 9, 2013) and *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002)).  It is, again, impossible to register for and receive the Service without clicking "**I ACCEPT**" to the TOS, not just once, but twice.  Hillyer Decl. ¶¶ 2-7.  Such clickwrap agreements are "routinely upheld."  *Hancock*, 701 F.3d at 1257-58 (citations omitted).  Indeed, the "*Specht* court acknowledged that clickwrap agreements similar to [23andMe's TOS] are generally enforced."  *Id.* at 1258 (citing *Specht*, 306 F.3d at 33-34).

Third, Plaintiffs' assertions that they did not read or understand the arbitration agreement before accepting it (*see* Stanton Decl. ¶¶ 3-6; Dilger Decl. ¶¶ 4-7), are legally irrelevant.  "The law is clear that a party entering a contract has responsibility for learning its terms."  *Chavez v. Bank of Am.*, 2011 WL 4712204, at *6 (N.D. Cal. Oct. 7, 2011).  "A party who manifests assent to a contact's terms is bound by them, and failure to read the terms is no excuse."  *Hancock*, 701 F.3d at 1256 (citations omitted).  *See also Guadagno*, 592 F. Supp. 2d at 1271.

## CONCLUSION

For the reasons stated above, and those set forth in the Opening Brief, the Court should grant 23andMe's Omnibus Motion to Compel and dismiss these consolidated actions or, at a minimum, stay them pending completion of arbitration.

REPLY BRIEF IN SUPPORT OF DEFENDANT'S OMNIBUS MOTION TO COMPEL ARBITRATION (LEAD CASE NO. 5:13-cv-05682-LHK)

OHSUSA:758199929.1

1

2   Dated: June 4, 2014                    ORRICK, HERRINGTON & SUTCLIFFE LLP

3
                                           _____
4                                          */s/ Robert P. Varian*
                                           Robert P. Varian
                                           Attorneys for Defendant 23andMe, Inc.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY BRIEF IN SUPPORT OF DEFENDANT'S
OMNIBUS MOTION TO COMPEL ARBITRATION (LEAD
CASE NO. 5:13-cv-05682-LHK)

OHSUSA:758199929.1